## Brake v. Mother of God's Cemetery et al.

(Decided Dec. 8, 1933.)

LAMBERS, WEHRMAN & ROACH for appellant.

JOSEPH P. GOODENOUGH for appellees Anna and Theodore Brake.

. OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellant, Marie A. Brake, and Elmer Brake were married on the 20th day of June, 1931. On the 15th day of July following, Brake died intestate. He was buried in the cemetery of the appellee Mother of God's Cemetery Association, in Covington, Ky., on a lot owned by his parents, the appellees Anna Brake and Theodore Brake. On the 6th day of February, 1932, the appellant brought this suit in which she averred that since the interment of her husband she had found it very inconvenient to visit and care for his grave at its present location; that she had made application to the appellees for permission to remove her husband to a suitable grave she had prepared for him in St. James Cemetery in Cincinnati, Ohio, and she asked the injunctive processes of the court to require the appellees to permit her to effect this removal. The cemetery association has made no defense, its attitude being entirely neutral in the matter. The mother and father of the deceased, however, defended, first, by traversing the allegations of the petition, and, secondly, by pleading what they called an estoppel based on these facts: When their son died, the appellant permitted them to take charge of the funeral and to inter the remains at their expense upon their lot, acquiescing in all that the appellees did in this connection. The appellant by reply traversed the alleged acquiescence and consent on her part to the burial of her husband in the lot of the appellees. The case was orally heard before the chancellor. But two witnesses testified, the appellant and the undertaker who buried her husband. The latter gave no evidence material to this controversy. The evidence of the appellant disclosed that, at the time her husband died, her mother-in-law and father-in-law did take charge of the obsequies and burial of her husband; that, while perhaps the appellant did raise the question of who the undertaker should be, yet she did not active-

ly oppose the choice made by the appellees; that she was laboring under a great shock caused by her husband's death; that the burial of her husband in the lot of the appellees was unopposed by her, and she permitted the appellees to bury her husband at their expense; that between the time of death of her husband and his burial, she was the guest of his parents in their home; that after the burial she went to live with her people who reside in Columbia Park, Ohio, some distance from Cincinnati; that she has selected a grave in St. James Cemetery on Price Hill, in Cincinnati, wherein to bury her husband if she is permitted to remove his remains; that it takes an hour and a half to make the trip from her home to the present resting place of her husband, providing she can make the trip in an automobile, if not, three hours are required to make the journey; that usually she has to stay overnight in town when she visits the grave; that she has visited the grave about once a month since her husband died; that it is very inconvenient to make the trip through the city of Cincinnati, across the bridge over the Ohio river, and through the city of Covington to the appellee cemetery; that the time to make the trip to her husband's grave if he were buried in St. James Cemetery would be more than cut in half, besides the avoidance of the great inconvenience and annoyance attendant upon a trip across the business sections of Cincinnati and Covington. Her evidence also discloses some friction between her and the appellees regarding the upkeep of the lot upon which her husband is buried, and considerable friction arising out of her request to remove the remains, which friction, of course, will not be obviated no matter how this case may be decided. The appellees introduced no proof. On the record in this condition, the court dismissed the appellant's petition, and she has appealed.

The appellees fairly and frankly confess that they are met at the outset by the case of Neighbors v. Neighbors, 112 Ky. 161, 65 S. W. 607, 608, 23 Ky. Law Rep. 1433, which is very like the instant case on its facts. In that case, the deceased, W. C. Neighbors, was buried in a cemetery near Elizabethtown. His widow lived about 9 miles from the cemetery, and it was very inconvenient, if not impossible, for her to give the grave of her husband such attention as she desired to and as should have been given it. Her home was at

670

Glendale and nearby was a cemetery suitably cared for and to which she .desired to remove the remains of her husband. The cemetery made no objection to the removal, but the brothers and sisters of the deceased did. In holding that the wife had the right to disinter the remains of her husband and reinter them, this court, after an examination of the authorities, said:

"The current of authority in this country is to the effect that there is not a property right to a dead body in a commercial sense, but there is a right to bury it which the courts of law will recognize and protect. This right embraces the right to select the place of burial and to change it at pleasure. This right, in the absence of testamentary disposition of the body, belongs to the next of kin. In this class some place the husband and wife. In other cases, where the controversy. has been between the wife and children, it was designated as being an issue between the wife and next of kin. This perhaps is technically accurate. Most of the adjudged cases in this country are to the effect that the husband has the right in preference to the next of kin to select the place where the wife's remains shall be buried, and that the wife has the like right as to the husband's remains. That paramount right in the husband and wife is in consonance with the custom of the country, respected by general sentiment, and has the support of reason. There is a tender and more affectionate relationship between husband and wife than between either and other relatives. In life there is a constant companionship, a continued mutual and dependent relationship, and such ministration in sickness and death that can be given by no other. * * * In this case the right is clearly in the mother and children to have the remains removed. When this right is exercised, it affords them an opportunity to give such care and attention to his grave as accords with the refined sentiments of a Christian people. The claim of right by the brothers and sisters to prevent the removal of the remains has no foundation in law."

It is argued, however, that, while the Neighbors Case was decided correctly on its facts, the language of the opinion is too broad, and that, whatever may be the paramount rights of a surviving spouse to inter the re-

mains of a deceased consort, yet, where the question is one of disinterment for the purposes of reinterment, the modern rule is not as broad as the rule is stated in the Neighbors Case, and that the proper rule is as laid down in the case of Yome v. Gorman, 242 N. Y. 395, 152 N. E. 126, 128, 47 A. L. R. 1165, wherein Judge Cardozo, speaking from the New York court, said that the wishes of the surviving spouse are not supreme and final when the body has been laid at rest and the aid of equity is invoked to disturb the quiet of the grave; that in such state of case there will then be "due regard to the interests of the public, the wishes of the decedent, and the rights and feelings of those entitled to be heard by reason of relationship or association. * * * A benevolent discretion, giving heed to all those promptings and emotions that men and women hold for sacred in the disposition of their dead, must render judgment as it appraises the worth of the competing forces. * * * To the making of that appraisal many factors will contribute. One may not fix their values in advance, for in so doing one would overlook the varying force of circumstance." In the Yome Case may be found a collection of authorities supporting the rule of that case. It must not be overlooked, however, that many jurisdictions follow the rule as it is broadly stated in the Neighbors Case. A collection of these authorities supporting the Yome Case and the rule as broadly stated in the Neighbors Case may be found in 21 A. L. R. 651; 33 A. L. R. 1432; 47 A. L. R. 1171, and see, also, 7 Harvard Law Review, 123, and 12 Harvard Law Review, 281. We are of opinion, however, that, whether this case be considered under the rule as broadly stated in the Neighbors Case or under the rule contended for by the appellees and as expressed in the Yome Case, the result must be the same. All the evidence introduced discloses, not only great inconvenience on the part of the surviving spouse in visiting the present resting place of her husband, but also considerable friction between her and the appellees with regard to the care of that lot and now personal arising out of appellant's request to move her husband's body. The appellees produced no evidence to establish that the place to which appellant proposes to remove her husband is not a fit or suitable resting place for his remains, or that it does violence to any religious beliefs their son entertained

at the time of his death; no evidence to disprove or to discountenance the appellant's evidence as to the friction which has arisen between these parties; no evidence to question her testimony as to her mental state at the time of her husband's death. About the only reason the appellees offer in opposition to the removal here sought and to offset the inconvenience of the appellant in visiting the present resting place of her husband, and the friction existing between her and the appellees, is the pleaded estoppel based on the appellant's alleged acquiescence in the burial of their son. The cases which support an estoppel against the surviving spouse in this matter of disinterment for reinterment, like that relied upon in the instant case, all stress the principle that the consent and acquiescence on which the estoppel is based must be freely given and when the surviving spouse is not laboring under a great mental strain. Furthermore, these cases all hold that such an estoppel must be established by clear and convincing testimony. McMillan v. Gentry, 96 Okl. 235, 221 P. 717; McEntee v. Bonacum, 66 Neb. 651, 92 N. W. 633, 60 L. R. A. 440; in the Matter of Richardson, 29 Misc. 367, 60 N. Y. S. 539. In the case before us, the most that can be said of appellant's conduct at the time of the burial of her husband is that she did not affirmatively object to the disposition that was made of his body. There is no proof that she actively consented. The proof at the best is only that she failed to object. There is no proof to gainsay her testimony that at this time, when she had scarce put off the joyous character of a bride to assume the somber mien of a widow, she was laboring under great mental strain and stress. To say that there was a free-willed acquiescence under such circumstances is to shut the eyes to the realities of the situation. We are convinced that the proof fails to measure up to the clear and convincing character the cases require to create an estoppel such as is here relied upon. For the reasons herein given, the judgment of the lower court is reversed, with instructions to enter a judgment in conformity with the prayer of the petition.