Alejandra Rodriguez **FERREL**, Individual-ly and as next friend of Yolanda Ferrel and Pedro S. Ferrel, Jr., Appellant,

v.

Hortencia S. **FERREL** et al., Appellees.

No. 15242.

Court of Civil Appeals of Texas, San Antonio.

Dec. 19, 1973.

Hardberger & Herrera, Donald J. Walheim, San Antonio, for appellant.

Rizik & Wennermark, San Antonio, for appellees.

BARROW, Chief Justice.

Appellant, the surviving widow of Pedro S. Ferrel, individually and as next friend of the two minor children of appellant and deceased, brought this suit against Hortencia S. Ferrel, the mother of deceased, and the Most Reverend Francis J. Furey, Archbishop of the Archdiocese of San Antonio, seeking to enjoin the defendants from preventing the disinterment and removal of the body of deceased from San Fernando Cemetery in San Antonio to a gravesite in the Queen of Heaven Cemetery in Hillside, Illinois. Archbishop Furey, in his official capacity as the owner of San Fernando Cemetery, has taken a neutral position and has advised the Court that he would abide by the decision of the Court. A take-nothing judgment was entered after a nonjury trial, and appellant has duly perfected this appeal.

There are no findings of fact or conclusions of law. Certain facts are undisputed. In 1965, Pedro Ferrel married appellant, and the couple made their home in Chicago with their two children and appellant's four children by a prior marriage. In June 1970, Pedro Ferrel came to San Antonio on an emergency family matter and was followed a few days later by appellant and the children. Pedro Ferrel had accumulated sufficient seniority in his job that he could take an extended leave of absence from same. The family made their home in San Antonio in a house owned by his mother, until September 8, 1970, when Pedro was shot and killed. On September 11, 1970, Pedro was buried in a family-owned plot in San Fernando Cemetery, where his father and two of his brothers were buried. On September 12, 1970, appellant and the children returned to Chicago to live in the home where they had lived prior to coming to San Antonio. Early in 1972, appellant sought to move Pedro's body to Chicago; and after his mother, who owned the burial plot, refused to consent to such removal, the suit was filed on April 10, 1972.

The applicable rule was stated in Fowlkes v. Fowlkes, 133 S.W.2d 241, 242 (Tex.Civ.App.—Galveston 1939, no writ), as follows:

"While it is the recognized rule in this state that the wife, upon the death of her husband, has the primary and paramount right to the possession of his body and the control of the burial or other legal disposition thereof . . . [citing auth.] . . . the rule has also been established that when the duty to furnish proper burial has been discharged the right of custody ceases and the body is thereafter in the custody of the law, and disturbance or removal of it is subject to the control and direction of a court of equity in any case properly before it. Thus any right of the wife to remove the body after it is interred is a qualified one."

See also: Atkins v. Davis, 352 S.W.2d 801 (Tex.Civ.App.—Fort Worth 1961, no writ). The distinction between the rights of the surviving widow existing prior to burial and her rights after burial is uniformly recognized. 25A C.J.S. Dead Bodies § 4(1).

The basis for this distinction was stated in Anno: Removal and Reinterment of Remains, 21 A.L.R.2d 472, 476, as follows:

"Despite the inconsistencies with which American cases on exhumation and removal of remains are rife, to this extent they all agree in principle: The normal treatment of a corpse, once it is decently buried, is to let it lie. This idea is so deeply woven into our legal and cultural fabric that it is commonplace to hear it spoken of as a 'right' of the dead and a charge on the quick. Neither the ecclesiastical, common, nor civil system of jurisprudence permits exhumation for less than what are considered weighty, and sometimes compelling, reasons. Se-

curing 'unbroken final repose' has been the object of both civil and criminal legislation."

■ Thus, while the right to remove a body remains with the surviving spouse, the right is a qualified one, and removal should not be permitted except under circumstances indicating a necessity or compelling reasons therefor. Atkins v. Davis, supra; Fowlkes v. Fowlkes, supra.

Appellant asserts two assignments of error on this appeal. Her first point urges that the trial court erred in denying her request for an injunction under the law and facts of this case. Under this point, she seeks a rendition granting the injunction. Under the second point, appellant urges that the trial court erred in admitting testimony from deceased's mother that Pedro Ferrel had said he wanted to be buried in the family plot in San Antonio. Appellant asserts that such testimony was in direct contravention of the Dead Man's Statute, and seeks a remand because of such error.

■ Appellant admitted that she consented to the burial in San Antonio but urges that such initial consent should not militate against her at this time. She testified that such consent was not freely given in that she was in a state of shock and grief over the sudden loss of her husband. She testified that at the time she consented she planned to make San Antonio her permanent home. She further testified that this plan was changed for her on the day after the funeral when deceased's mother ordered appellant and her family to vacate the house immediately. She, thus, had to return to the original home in Chicago. Deceased's mother denied that she ordered appellant out of the house or in any way contributed to appellant's decision to move back to Chicago. Since the trial court denied her petition for injunction, and there are no findings of fact, we are required to presume that all disputed facts, including appellant's reasons for leaving San Antonio, were resolved against appellant by the trial judge.

■ Appellant also urges that the San Antonio gravesite is unmarked and is not being properly maintained. Photos of the gravesite were introduced into evidence in support of such proposition. It is seen that stone markers have been erected for Pedro's father and for one of his deceased brothers, but there are no markers for Pedro or Francisco. Furthermore, although the cemetery is nearly completely covered with grass, there is little grass over Pedro's gravesite. Care of the property, including mowing and trimming of the grass, as well as some watering, is performed by cemetery workers. However, St. Augustine grass must be watered and cared for by the plot owner. Appellee mother testified that she had been unable to secure a marker or plant grass on Pedro's gravesite because of her illness, but planned to do so when able. There is no contention that she would not permit appellant to erect a marker. Neither the testimony of appellant, relative to the condition of the gravesite, nor the physical appearance from the photographs, demonstrates such a situation that would compel or necessitate that the body be removed.

■ Therefore, we are relegated to the proposition of whether the fact that appellant and family are now living in Chicago establishes as a matter of law a necessity or a compelling reason for removal of the body from San Antonio to Chicago. It is not sufficient for us to determine that such fact would support a judgment permitting appellant to remove the body, or even that we would have granted such relief. The question is whether the trial court has abused its discretion in denying this equitable relief. Since there are no findings of fact, we can only surmise as to the basis for his denial thereof. However, we cannot say from the record before us that, as a matter of law, appellant was entitled to the equitable relief sought herein. Appellant's first point of error is overruled.

■ Under her second point, appellant complains of the admission of testimony from deceased's mother of a conversation

between Pedro, appellant and said mother, wherein Pedro said that he wanted to be buried in San Antonio with his father and brother. Appellant timely objected to such testimony as being in contravention to the Dead Man's Statute, Article 3716, Vernon's Tex.Rev.Civ.Stat.Ann.[1] The mother urged that such testimony was invited by prior questions put to her by appellant's attorney. While we doubt that such testimony was invited by the unresponsive answer of deceased's mother, the trial court did not err in admitting this testimony. The Dead Man's Statute is not applicable here, since the suit was not brought by or against the heirs or legal representatives of deceased in such capacity. Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822 (1946); 19 Tex. Jur.2d, Decedents' Estates, Section 996. Appellants' second point is therefore without merit.

The judgment is affirmed.

1. This statute provides: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."