420 A.2d 469

Florence E. NOVELLI and Lloyd E. Carroll

v.

Pamela Kay CARROLL and Whitemarsh Memorial Park.

Appeal of Pamela Kay CARROLL.

Superior Court of Pennsylvania.

Argued Dec. 6, 1978.

Filed April 25, 1980.

144

W. Roger Simpson, Lancaster, for appellant.

Frederick W. McBrien, III, Norristown, submitted a brief on behalf of Novelli and Carroll, appellees.

Daniel A. Rothman, Spring House, for Whitemarsh Memorial Park, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from an order enjoining appellant from removing the body of her deceased husband, Bruce Carroll, from its present burial site in Montgomery County to a new site in Lancaster County.

Appellant and Bruce Carroll were married in June 1976. They had both been married before, and had children from the prior marriages. Mr. Carroll was born in Massachusetts

but moved with his parents and family to Norristown, Montgomery County, when he was a child. Appellant was born and raised in Lancaster, Lancaster County. After their marriage they lived for a few months in Lancaster County but later moved to Dallas, Texas. On February 17, 1977, while in Dallas, Mr. Carroll, at the age of 33, committed suicide. On the day of his death, his brother, one of appellees, came to Dallas to comfort appellant and to help her with the funeral arrangements. The evidence regarding their meeting will be discussed in detail later; for the moment it is sufficient to say that appellant wanted to have her husband buried in Lancaster, but the brother persuaded her to have him buried in Montgomery County at the Whitemarsh Cemetery. On February 22, 1977, Mr. Carroll was buried at Whitemarsh. Appellant paid the expenses. Later in May 1977, appellant informed appellees of her intent to have her husband's body removed to Riverview Cemetery in Lancaster County; she did not want the body to remain at Whitemarsh because Whitemarsh was a three hour round trip from her house in Lancaster. Appellees thereupon brought the present action to enjoin the removal.[1]

## –1–

In enjoining the removal, the lower court stated that "[t]he facts of this case do not present any exceptional causes for the disinterment of the decedent's body. He is buried in a pleasant setting near to his birthplace,[2] clearly within reach of his widow for visits however frequently she desires." Opinion of the Lower Court at p. 4. It is necessary at the outset to note that this statement discloses that the court committed error.

The leading case in Pennsylvania on the right to inter and reinter a body is *Pettigrew v. Pettigrew*, 207 Pa. 313, 56 A.

---

1. The Whitemarsh Cemetery was represented at the hearing but did not contest the issue of reinterment. Its only concern is that any court order include a direction as to the payment to it of any expenses it incurs in complying with the order.

2. This statement is mistaken, since the decedent was born in Massachusetts. *And see* footnote 5 *infra*.

878 (1904). There the facts were as follows. The decedent died leaving a widow and one child, a daughter. Approximately one year after the decedent was buried, the daughter died and was buried in a different cemetery, where the widow had purchased a lot after her husband's death. A short time after the daughter was buried, the widow had a grave dug beside the daughter's grave for the reinterment of her husband. She did this because there was not enough room for the burial of the daughter and the widow in the lot where the husband was buried unless all were placed in the same grave. Relatives of the husband sought to enjoin the reinterment. In affirming the lower court's order dismissing the bill for an injunction, the Supreme Court examined the pertinent authority and explained:

The result of a full examination of the subject is that there is no universal rule applicable alike to all cases, but each must be considered in equity on its own merits having due regard to the interests of the public, the wishes of the decedent and the rights and feelings of those entitled to be heard by reason of relationship or association.

Subject to this general result it may be laid down first, that the paramount right is in the surviving husband or widow, and if the parties were living in the normal relations of marriage it will require a very strong case to justify a court in interfering with the wish of the survivor.

Secondly, if there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin, modified it may be by circumstances of special intimacy or association with the decedent.

Thirdly, how far the desires of the decedent should prevail against those of a surviving husband or wife is an open question, but as against remoter connections, such wishes especially if strongly and recently expressed, should usually prevail.

Fourthly, with regard to a reinterment in a different place, the same rules should apply, but with a presumption against removal growing stronger with the remoteness of connection with the decedent and reserving always the right of the court to require reasonable cause to be shown for it.

207 Pa. at 319, 56 A. at 880.

■ As its opinion discloses, the lower court based its order enjoining reinterment on the premise that reinterment should not be permitted unless "exceptional causes" are shown. Opinion of Lower Court at 4, quoted *supra.* That may be the law in some jurisdictions, *see Hickey v. Hickey,* 156 Ind.App. 610, 298 N.E.2d 29 (1973), but it is not the law in Pennsylvania. As the Supreme Court made plain in *Pettigrew,* with regard to reinterment there is "reserv[ed] always the right of the court to require *reasonable cause* to be shown for it." 207 Pa. at 319, 56 A. at 880 (emphasis added). In addition, the Court made plain that in deciding whether reasonable cause for reinterment had been shown, the lower court should take into account a variety of factors, some of which the Court identified. Whether reasonable cause for reinterment has been shown will depend upon the respective weight, or persuasiveness, of these factors as they are all considered together: "there is no universal rule applicable alike to all cases, but each must be considered in equity on its own merits . . . ." *Id.*

–2–

It follows from the foregoing that the question we must decide is whether reasonable cause for reinterment has been shown in the present case. In making this decision, it will be helpful to proceed in two steps. First we shall examine the cases, to see how the existence, or non–existence, of reasonable cause has been determined in other situations. Then we shall apply the principles derived from those cases to the facts disclosed by the record in the present case.

148

An examination of the cases will show that in determining whether reasonable cause for reinterment has been shown, a court should first consider whether certain factors are present. This consideration will identify the distinctive features of the particular case before the court, and will enable it to decide the case "in equity on its own merits." *Pettigrew v. Pettigrew, supra,* 207 Pa. at 319, 56 A. at 880.

■ One of the factors to be considered is the degree of relationship that the party seeking reinterment bears to the decedent. Thus the interest of a surviving spouse or other close relative in reinterment is stronger in most cases than is the interest of someone less closely related or a total stranger. *See Leschey v. Leschey,* 374 Pa. 350, 97 A.2d 784 (1953); *Pettigrew v. Pettigrew, supra.* In this regard, the strength of the relationship may be important. In *Leschey v. Leschey, supra,* the Supreme Court stated that "[t]he reason for the preference given to the surviving spouse in the matter of interment or reinterment unquestionably is founded upon the relationship between husband and wife as the closest family tie." 374 Pa. at 355, 97 A.2d at 787. *And see Pettigrew v. Pettigrew, supra* ("if the parties were living in the normal relations of marriage it will require a very strong case to justify a court in interfering with the wish of the survivor"). In contrast, if the husband and wife were separated before the decedent's death, the preference given to the surviving spouse may be weaker. *See Stackhouse v. Todisco,* 370 Mass. 860, 346 N.E.2d 920 (1976). The same may be said with regard to any relative who, while close in degree of blood relationship to the decedent, was in fact not on close personal terms with the decedent.

Another factor to be considered is the degree of relationship that the party seeking to prevent reinterment bears to the decedent. A contest between a surviving spouse and a child differs from a contest between that same spouse and someone less closely related, or a stranger. *See Pettigrew v. Pettigrew,* supra; *Stevens v. Ganz,* 49 Pa.D. & C.2d 286 (Lehigh 1970) (daughter against widow). In some cases,

however, a stranger may have a strong interest in preventing reinterment. This is especially true in a case where reinterment would violate a rule of the religious organization that granted the right to inter the body in the first place. *See Theodore v. Theodore*, 57 N.M. 434, 259 P.2d 795 (1953); *see Intorre v. The Catholic Cemeteries Ass'n*, 112 Pitts.L.J. 510 (1964) (husband's petition to disinter wife from Catholic Cemetery refused as disinterment would violate church rule prohibiting disinterment from consecrated ground).

■ Another factor to be considered is the desire of the decedent. Besides the general presumption that the decedent would not wish his remains to be disturbed, a specific statement of desire by the decedent may also be important in deciding whether to permit reinterment. Thus a decedent's express testamentary wish to be buried in the place of original interment will be a strong factor against reinterment, as will evidence of the decedent's religious belief that he should be buried in a particular place or manner. *See Theodore v. Theodore, supra; Hickey v. Hickey, supra*; 54 A.L.R.3d 1037. Conversely, however, the decedent's desire to be buried with his family may be a factor favoring reinterment, if that desire cannot be fulfilled in the place of original interment. *See Leschey v. Leschey, supra; Hood v. Spratt*, Miss., 357 So.2d 135 (1978). The decedent's desire to be buried in a specific location may also be a factor favoring reinterment. *See Miller v. New Holland Cemetery Ass'n*, 14 Pa.D. & C.2d 735, 738 (York 1957) (husband had indicated desire, as a veteran, to be buried at Gettysburg; reinterment allowed).

■ Another factor to be considered is the conduct of the person seeking reinterment, especially as it may relate to the circumstances of the original interment. If, for example, the surviving spouse chooses the original burial site, his or her later claim to a right of reinterment may be found to have been waived. *See Antonitis v. McCormick*, 2 Pa.D. & C.3d 595, 600 (Luzerne 1977). But if the surviving spouse did not agree to the site of the original interment, or did

agree but under duress, or only intended the interment to be temporary, there will be no waiver. *See Hetrich v. Jordan*, 21 Cumberland 26 (1971) (temporary); *Miller v. New Holland Cemetery Ass'n, supra* (widow very upset when consented to original burial site). *But see Datz v. Dougherty*, 41 Pa.D. & C. 505 (1941) (normal grief of widow will not vitiate her consent). Similarly, if the consent to the original site was based upon the understanding that the site would be maintained so that the surviving spouse could also be buried there, and later events make it impractical to carry out that understanding, the consent to the original site may be vitiated. *See Leschey v. Leschey,* supra; *Moore v. Sheafer,* 282 Pa. 360, 127 A. 784 (1925); *Previty v. Cappuchio,* 107 R.I. 210, 266 A.2d 39 (1970).

Another factor to be considered is the conduct of the person seeking to prevent reinterment. Suppose, for example, a widow seeking reinterment is opposed by the decedent's other relatives. If those other relatives coerced or tricked the widow into agreeing to the place of original interment, their argument against reinterment may be very weak. *See Sanson v. Sanson,* 30 Pa.Dist. 655 (1920). The same will be true if the other relatives have done something to frustrate the widow's desire to visit the gravesite or be buried there. *See Moore v. Sheafer, supra; Previty v. Cappuccio, supra.*

■ Another factor to be considered is the length of time that has elapsed since the original interment. Generally, the sooner the person seeking reinterment acts after the original interment, the better the chance of obtaining reinterment. *See Hickey v. Hickey, supra* ; *Fox v. Gordan,* 16 Phila. 185 (1883). In this regard, the number of times the body has already been reinterred may be important.

■ Finally, another factor to be considered is the strength of the reasons offered both in favor of and in opposition to reinterment. If the person seeking or opposing reinterment does so to harass another, his case will be very weak. *See Hickey v. Hickey, supra.* However, if the reason

offered for reinterment is that the area around the grave-side has changed, or that the original plan to have the family buried together is no longer possible, the reason may be quite compelling. *See Leschey v. Leschey, supra* ; *Moore v. Sheafer, supra.* If the reason offered for reinterment is the greater ease with which the surviving spouse may then visit and care for the grave, the reason, while not compelling, in nevertheless valid. *See Brake v. Mother of God's Cemetery*, 251 Ky. 667, 65 S.W.2d 739 (1933); *Neighbors v. Neighbors*, 112 Ky. 161, 65 S.W. 607 (1901). *But see Ferrel v. Ferrel*, 503 S.W.2d 389 (Tex.Civ.App.1973).

■ After the court has identified the factors present in the particular case, it should appraise these factors as they bear upon each other. As Judge CARDOZO stated, after discussing the kinds of factors to be considered: "We have sought, not to declare a rule, but to exemplify a process. The considerations we have instanced and others of like order may move a court of equity to keep the grave inviolate against the will of the survivors. They are none of them so absolute, however, that they may not be neutralized by others." *Yome v. Gorman*, 242 N.Y. 395, 403–05, 152 N.E. 126, 129 (1926).

–b–

■ When the principles derived from the foregoing cases are applied to the facts disclosed by the record in the present case, it is at once apparent that as the surviving spouse, appellant's claim to a right to reinter her husband's body is a powerful claim. In *Pettigrew v. Pettigrew, supra*, the Supreme Court stated that "if the parties are living in the normal relations of marriage it will require a very strong case to justify a court in interfering with the wish of the survivor." 207 Pa. at 319, 56 A. at 880. The evidence is that appellant and her husband were living in the normal relations of marriage. In addition, appellant's reason for seeking reinterment is both valid and understandable. Reinterment will enable her to visit her husband's grave much more easily. We do not dismiss the difficulty of a three

hour round trip as readily as did the lower court. Given our winter weather, such a trip may often present considerable difficulties. Also, when appellant is an older woman, she may hesitate to undertake it. Furthermore, appellant was born and raised in Lancaster. It may very well be that she will choose to be buried there, and reinterment would enable her to be buried with her husband. Finally, there is no evidence contradicting appellant's reason for seeking reinterment. Thus, there is not, as there is in some of the cases, *see* Annot. 7 A.L.R.3d 747, any testamentary expression by her husband of a desire to be buried in Whitemarsh;[3] he was not born in Whitemarsh; and he lived with appellant in Lancaster. In *Leschey v. Leschey, supra,* the Supreme Court stated that where there is no expression of the decedent's desire, "the wishes of the widow [to have the body of her husband reinterred], under the rule laid down in the *Pettigrew* case, [are] paramount and prevail over those of the children." 374 Pa. at 354, 97 A.2d at 787. The Court further stated in *Leschey* (quoting 15 Am.Jur., § 9, p. 834), that "if the widow has not waived her [paramount] right [to control the disposition of her husband's body], she may, against the objections of the next of kin, remove her husband's body, after interment, to another place of sepulture." 374 Pa. at 353, 97 A.2d at 786.

Thus, the issue in this case is whether appellant did waive her paramount right to control the place of burial of her husband's body. The evidence on this issue was as follows.

Appellant spoke to her husband in the early morning shortly before she heard the gunshot and returned to find him dying. He was taken to the hospital and died later that

3. One of appellees, the decedent's brother, testified that while he and the decedent were playing golf at a course across the street from Whitemarsh Cemetery the decedent expressed a desire to be buried there because it was near his favorite golf course. As against this, appellant testified that the decedent told her that he liked Riverview Cemetery when they visited it while they were living in Lancaster County. Even if we were to treat the brother's testimony as uncontradicted, it is not the sort of evidence that has been held of sufficient strength to overcome the widow's paramount right to control the disposition of her husband's body.

afternoon. In the meantime she called her husband's mother, and in response, her husband's brother, one of appellees, flew to Dallas. Appellant met with the brother in Dallas, the day after her husband died, and told him that she planned to have her husband buried at Riverview Cemetery in Lancaster but she could not remember the cemetery's address. The brother responded by recommending that appellant's husband be buried at the Whitemarsh Cemetery. Appellant knew nothing about that cemetery. She testified that the brother told her that Whitemarsh was located midway between Lancaster and Norristown, and that she agreed to that site on that basis. The brother in his testimony denied making such a statement concerning location. At the time of the burial services, appellant did not say anything against the Whitemarsh Cemetery as the site of burial but did complain to some of her relatives, and moved for reinterment within three months.

Despite this evidence, the lower court did not decide the issue of waiver.[4] Instead, after misstating the significant fact as to where the conversation concerning the burial site took place,[5] the lower court simply concluded that appellant had shown no "exceptional causes" for the reinterment. This disposition does not preclude our reaching a final decision, however, for when the issue of waiver is considered, it is clear that the evidence cannot support a finding of waiver.

Appellant's failure to contest the location at the time of the burial, when she first became aware of the distance from Lancaster to Whitemarsh, does not prove a waiver; it would be unreasonable indeed to hold that at the peril of

4. The lower court evidently recognized the issue of waiver, for it cited *Leschey v. Leschey, supra,* for the proposition that "[t]he better rule seems to be, however, that if the widow has not waived her right, she may, against the objections of the next of kin, remove her husband's body after interment, to another place of sepulture." *Id.,* 374 Pa. at 553, 97 A.2d at 786. Nevertheless, despite this citation, the lower court did not decide the issue of waiver.

5. The lower court stated that the conversation concerning the burial site took place in Montgomery County; in fact, it took place in Dallas.

waiver, a widow must disrupt her husband's burial services. Nor is there evidence of any such lapse of time as proves a waiver; appellant moved for reinterment within three months.

The only possible evidence of waiver is the evidence of appellant's consent in Dallas. If we accept appellant's testimony regarding the conversation in Dallas, there was no waiver, for if the brother did misstate the location of the cemetery, then, based upon that proof alone,[6] appellant should prevail, for her consent was based upon a misapprehension of fact; Whitemarsh is not located midway between Lancaster and Norristown. Incident to its failure to consider the issue of waiver, the lower court made no finding of fact as to what was said. In the absence of any such finding of fact, we cannot decide whether appellant's or the brother's version of the conversation is accurate. Even if we accept the brother's version of the conversation, however, it is still clear that appellees have not proved a waiver in this case. In his testimony the brother admitted that appellant wanted her husband buried at the Riverview Cemetery in Lancaster. It was her right, as the widow, to choose that site. *Leschey v. Leschey, supra* ; *Pettigrew v. Pettigrew, supra.* The brother also admitted that appellant was not familiar with the Whitemarsh Cemetery, and only chose it upon his urging. Finally, the evidence shows that appellant's husband committed suicide by gunshot at the age of 33, and one may reasonably infer from this evidence that when appellant spoke to the brother, only one day after the suicide, she was in a state of shock. When all of this evidence is considered, it is clear that it cannot support a finding of the kind of free, informed consent or exercise of choice required before a court may rule that a widow has waived her right to choose the site of her husband's burial.

6. Appellant apparently offered evidence in the form of an affidavit of a third party that appellee told her in Dallas that Whitemarsh was located midway between Lancaster and Norristown. There was an objection to this evidence, however, and although the lower court did not rule on the objection, it would appear well taken. In any case, the affidavit has not been included in the record certified to this court.

The order of the lower court is reversed and appellant may proceed with the reinterment if she wishes. Appellant shall bear all the costs incurred in the reinterment.

WATKINS, J., files a dissenting opinion.

WATKINS, Judge:

It is clear that a surviving spouse, if living with the deceased spouse at the time of his death, has the right to determine the details of his burial in the first instance. However, once a body is interred there is great reluctance in permitting same to be moved, absent clear and compelling reasons for such a move. *Stevens v. Ganz*, 33 Lehigh 452, 49 Pa.D. & C.2d 283 (1970). Thus there is a clear distinction between the rights existing prior to burial and those after burial because after the interment of the body, it is in the custody of the law. *Intorre v. Catholic Cemeteries Association of the Diocese of Pittsburgh*, 112 Pitts.L.J. 510 (1964). While the interests of the surviving spouse in reinterment is generally stronger than the interest of someone less closely related to the decedent those interests are not the only factors to be considered in determining whether a reinterment will be ordered.

In the instant case there was eveidence that the decendent, being an avid golfer, had expressed a desire to be buried at Whitemarsh Memorial Park which was near a favorite golf course and in the same community where he had moved as a child and been raised. Appellant lives in Lancaster which is approximately a one (1) hour and eleven (11) minutes drive from the Whitemarsh cemetery and had originally agreed to her spouse's burial there. Her sole objection to Whitemarsh is that it is located a few miles east of where she claims appellee told her it was. Thus, the issue concerns the conflict between the convenience of the widow (one-half hour in travel time more than she thought it would be) and the sanctity of the grave, once established. I feel that the reasons for reinterment advanced by appellant are not sufficient to rebut the presumption that the decedent

156

would not desire his remains to be disturbed.  See *54 A.L. R.3rd 1037.*

I would affirm the decision of the court below.