GRIFFIS, J.,
for the Court.
¶ 1. Dorothy Littleton True, John L. True, Patricia Ann True Schmidt, Mary Juanita True Hegwood, James T. True, Janice Elizabeth Davis McGraw, and William Eugene Davis, Jr. (“Billy, Jr.”) brought this action against William Eugene Davis, Sr. (“Bill, Sr.”) after he had the body of his deceased wife exhumed and reburied elsewhere. The chancellor held that Bill, Sr. had unlawfully disinterred his deceased wife’s body and ordered him to rebury it in its original resting place. Bill, Sr. appeals and argues that the chancellor considered incorrect factors in its decision. We find no error and affirm.
FACTS
¶ 2. Bill, Sr. was married to Frances Elizabeth True Davis for over fifty-one years. The couple had three children: Janice, Debra, and Billy, Jr. Frances passed away on November 20, 2004. Besides her husband and children, she was survived by her mother Dorothy and siblings John, Patricia, Mary, and James.
¶ 3. Bill, Sr., his children, and Frances’s family agreed to bury her at the foot of her father’s grave in the True family section of Hopewell Baptist Church Cemetery. Frances’s wish was to be buried as close to her father’s grave as she could be. She was buried there on November 24. To the right of Frances’s grave a space was reserved for Bill, Sr. A double headstone was placed over both sites, bearing Frances’s and Bill, Sr.’s names and statistics.
¶ 4. Bill, Sr. remarried on July 4, 2005. This caused a considerable amount of friction between him, Janice and Billy, Jr. Janice was furious there was another woman in her mother’s house. Janice was concerned that the new wife would get the family homestead instead of Janice, Debra, and Billy, Jr. Janice threatened that if Bill, Sr. remarried, she would not allow him to be buried next to Frances and would remove the double headstone. Bill, Sr. was told that Billy, Jr. threatened to have Bill, Sr. cremated so he could not be buried next to Frances.
¶ 5. Concerned that he would not be buried next to Frances in the True family plot and wanting to be buried next to Frances and his new wife, he approached *1273 the funeral home about having Frances’s grave relocated to the Davis family section of the same cemetery. He was directed to the county coroner who gave him permission for the exhumation and reburial. He had Frances’s body reburied in the Davis family section in November, 2005. The new grave is fifty yards southeast of the original gravesite.
¶ 6. Dorothy, John, Patricia, Mary, James, Janice, and Billy, Jr. sued Bill, Sr. to have Frances’s body moved back. The lower court found the body was unlawfully disinterred and ordered it reinterred in its original grave. Aggrieved, Bill, Sr. appeals.
STANDARD OF REVIEW
¶ 7. Questions of law are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).
ANALYSIS
¶ 8. The sole issue that Bill, Sr. raises is whether the chancellor “used incorrect factors in considering whether or not a body may be moved once it has been interred.” Bill, Sr. believes that instead of applying a five factor test, the chancellor was restricted to considering whether there were “compelling reasons” to relocate Frances’s body. Appellees respond the chancellor applied the correct test. We agree.
¶ 9. This question was settled in Hood v. Spratt, 357 So.2d 135 (Miss.1978). The supreme court adopted what it termed as the “compassionate approach of permitting a surviving spouse to remove the body of a deceased spouse to another burial site for compelling reasons and in the absence of a waiver of such right.” Id. at 136-37. To make this determination, the court held that certain factors must be considered where appropriate. Id. at 137. Namely, these include: (1) public interest, (2) wishes of the decedent, (3) rights and feelings of those entitled to be heard by reason of relationship, (4) rights and principles of religious bodies or other organizations which granted interment in the first burial site, (5) and whether consent was given to interment in the first burial site by the one claiming the right of removal. Id.
¶ 10. In weighing the factors, “the surviving spouse ha[s] a paramount right to designate the burial site and, if the parties were living in normal marital relations, a very strong case would be required to justify judicial interference with the survivor’s wish.” Id. (citing Pettigrew v. Pettigrew, 207 Pa. 313, 56 A. 878 (1904)). Further, “to what extent the desires of the decedent should prevail against those of the surviving spouse was left an open question, but as against the remoter connections, such wishes, especially if strongly and recently expressed, would usually prevail.” Id. A decedent’s express testamentary wish to be buried in the original site will be a strong factor against reinterment. Novelli v. Carroll, 278 Pa.Super. 141, 420 A.2d 469, 473 (1980) (discussing Pettigrew and its progeny).[1]
¶ 11. The chancellor applied these exact factors to the case at bar. Bill, Sr. does not argue that the chancellor incorrectly analyzed or weighed these factors. However, he insists that the sole question is whether he as the surviving spouse has a *1274 compelling reason to relocate Frances’s body. We conclude that the chancellor applied the proper factors and was not in error as a matter of law. Accordingly, we find no error and affirm.
¶ 12. Although it was not included in the precise issue identified by the appellant, the appellant’s brief also seems to argue that the chancellor erred in weighing the Hood factors. Out of an abundance of caution, we will address this issue albeit under a different standard of review. This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002). The chancellor, by [his/] her presence in the courtroom,' is best equipped to listen to the witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses. Howard v. Fulcher, 806 So.2d 328, 332(¶ 15) (Miss.Ct.App.2002). “It is necessarily the case that, when conflicting testimony on the same issue is presented, the chancellor sitting as trier of fact must determine which version he finds more credible.” Id.
¶ 13. At the conclusion of trial, the chancellor stated:
The Court finds the facts as follows:
Following a 51-year marriage, [Frances], succumbed to cancer dying on the 20th day of November of 2004. Prior to her death, it is undisputed that her desire was to be buried, first of all, in Hopewell Church located in Yalobusha County, Mississippi, and more specifically, as close to her father, Meshack Turner True, as she could be. All parties acknowledge that they have been advised by the decedent at one time or the other that those were, in fact, her wishes.
Apparently, acquiescing to her request, [Bill, Sr.], along with all of the plaintiffs and other family members, agreed to bury her following her death on the 24th day of November in a grave at the feet of her father in that same cemetery in what is known within that cemetery as the True family plot. It’s noted that another empty ploy to the right of [Frances], was unoccupied and remains empty.
In July or specifically July 4 of 2005, [Bill, Sr.] remarried, marrying Josephine Davis, the former wife of his now deceased brother, which apparently caused considerable friction between [Bill, Sr.] and his children, as well as relatives of [Frances]. In August of 2005 without court authority, [Bill, Sr.] had the body of [Frances] disinterred and re-buried some 50 yards away in that same Hopewell Cemetery in what is commonly known as the Davis family plot, again within that same cemetery.
As for reasons for the disinterment and removal of the body to a new grave site, [Bill, Sr.] stated that his reason for moving same was so that he could be buried between his former wife, Frances Davis, and his current wife, Josephine Davis, at the time in which they all are deceased. Further, he testified that his reasons for removing the body was so that he could be buried along with both of his wives believing that the surviving children would have his body cremated, and that the True family would not allow him to be buried in the True family plot alongside of Frances. Specifically and *1275 notably, he offers no evidence whatsoever to substantiate that claim other than mere speculation, specifically with respect to the True family.
[[Image here]]
I first look to the public interest. There’s been no specific argument nor evidence which indicates that the general public has an interest in this removal, and I find that that particular factor is inapplicable.
We look then to the wishes of the decedent. Clearly, the wishes of [Frances] were to be buried as close as possible to her father who is interred in the True family plot. That is undisputed and confessed by all parties.
We look then to the element of the rights and feelings of those entitled to be heard by reasonable relationship. Overwhelmingly, the children, siblings, and mother of [Frances] desire for [her] to be buried where she originally was before being moved by the unilateral actions of [Bill, Sr.]. Other than [Bill, Sr.], there is no evidence that any others are interested in the body being allowed to remain where it is as this point in time.
We look then to the rights and principles of religious bodies or other organizations which granted interment of the first burial site. There are none to be considered at this point in time, and no evidence presented with respect thereto.
Finally, we look at whether consent was given to interment of the first burial site by the one claiming the right of removal. Here [Bill, Sr.] claims the right of removal. It is undisputed that at the time that interment was first made and burial was first made on the 24th day of November of 2004, that all parties, including [Bill, Sr.], were in agreement that, A, [Frances] wished to be buried where she originally was, and all family members, including [Bill, Sr.], were happy to have [Frances] interred at the feet of her father in that plot.
Considering all of those factors in the totality of the circumstances and applying the evidence as set forth before this Court, the Court finds that by clear and convincing evidence that the body should not have been moved and should be re-interred in the original site at the feet of the decedent’s father.
¶ 14. An examination of the record reveals these findings are supported by substantial credible evidence.
¶ 15. It was undisputed that Frances wanted to be buried “as close to her father as possible” in the Hopewell Cemetery. Every family member who testified, including Bill, Sr., acknowledged this. James testified that in the hospital, a week before Frances passed away:
Bill was on one side of the bed. I was on the other side of the bed. Frances held my hand and his hand and told us that she wanted to be buried by her daddy or as close to her daddy as we could get her.
Q. And what comments, if any, did either one of y’all make?
A. He said that he was going — he would put her as close as he could to her daddy.
John testified that they were burying her at the foot of her father’s grave because that’s where she wanted to be buried. Janice testified, “[Frances] talked to me a number of times about where she wanted to be buried, and she’s done that her entire life.She was very meticulous *1276 about how she wanted things done. She wanted it — she was very orderly about that. She had written down in a book everything that she wanted to happen with her funeral, and she told us a lot.” Janice testified that after the grave site was selected:
My dad came in. I was in the kitchen. He walked over to me, and he said, we found a grave site, and he started to tell me. He started to cry. And my brother finished by telling me exactly where they had chosen the grave site, and everybody was in agreement. My sister, myself, my brother, and my father all said that’s exactly where my mother would want to be buried.
She testified that at Frances’s funeral, after she was laid to rest, Bill, Sr. said, “[W]ell Mrs. Frances, I guess you’re happy now. You’re just right where you wanted to always be, right at the foot of your father.” Mary and Patricia likewise testified that Bill, Sr. said this. Bill, Sr., admitted making this statement. Patricia testified that the original burial site corresponded with the wishes Frances communicated to her. Dorothy testified at the funeral home, that Bill, Sr. told her he had put Frances right where she wanted to be. Dorothy also testified that the day before Frances went in the hospital for the last time, she told Dorothy that was where she wanted to be buried. There was substantial credible evidence to support the chancellor’s finding under this factor.
¶ 16. As for the rights and feelings of those entitled to be heard, James testified, “I wanted her to be buried where she wanted to be buried.” Janice testified she wanted her mother returned to her original burial site, because she wants to respect her mother’s dying wish. Mary testified that there is no road to the new burial site to where she can easily take her elderly mother Dorothy to visit Frances’s grave. Mary testified that her mother is not able to walk the distance to the new grave. Patricia testified that she wanted to “move Frances back where she had written — she had told us for years what she wanted to have as her final resting place.” Dorothy testified that before Frances was removed, Dorothy visited her grave two or three times a week. Since Frances was moved, “I haven’t been able. It’s too far. I can’t walk.” She testified, “[Frances] said, Mama, keep flowers on my grave. I can’t go and put flowers on her grave. I haven’t been able to since he moved her body, but I kept flowers there, and the girls helped me keep flowers there for her.” Dorothy also testified she wanted Frances moved back because that was her dying wish.
¶ 17. Bill, Sr. testified on direct that:
I got information that I wasn’t going to be allowed to be in the True site. I think that came from some information Janice had sent to Billy for court in Florida. And I also was told that the plans for me was they would cremate me when I died. There was no plans for me in the cemetery with Frances in the True Plot.
On cross-examination, however, Bill, Sr. could not identify the source of the cremation threat. Someone he could not identify told him that Billy, Jr. had threatened to have him cremated. Bill, Sr. and Billy, Jr. were adversaries in an eviction action in Florida court. Bill, Sr. testified he desired to be buried in the middle of his two wives Frances and Josephine. There was no room to the right of Bill, Sr.’s original site for Josephine to be buried, because there is a road there. But Bill, Sr. admitted that to be buried in any particular plot in the *1277 cemetery, one just has to get permission from the church. He also testified that he had made arrangements with the funeral home to prevent his cremation.
¶ 18. Janice testified that she never had a discussion about cremating her father’s body against his wishes and would not agree to that. Janice did admit to not wanting her father and his new wife buried next to her mother in the True plot. Dorothy likewise testified that she had never been party to a conversation that Bill, Sr. would be cremated or not allowed to be buried next to Frances. Dorothy testified she had nothing against Bill, Sr. Bill, Sr. could not identify any threat from the True family against his burial next to Frances.
1119. As for Bill, Sr.’s consent to the original burial site, James testified that Bill, Sr. picked out the first burial site after Frances passed away. John testified that everyone, including Bill, Sr. acquiesced in Frances’s first burial site. He testified that after a family meeting about where to bury Frances, Bill, Sr. and Billy, Jr. accompanied funeral home personnel to verify there was room to bury her in the chosen spot. The cemetery caretaker Carl Vick and gravedigger Randy Paul Morgan testified that Bill, Sr. was the one who selected the burial site. Finally, Bill, Sr. testified he and Billy, Jr. selected the original burial site.
¶ 20. We find there is substantial credible evidence to support the chancellor’s findings and weighing of the Hood factors. The only concern Frances expressed as to her burial was to be buried next to her father. The chancellor was justified in finding that there was no evidence that the rest of the True family or even Bill, Sr.’s daughter Debra, had ever threatened to prevent Bill, Sr. from being buried next to Frances in the True Plot. There is further evidence that all Bill, Sr. has to do is request permission from the church, of which he is a deacon. The chancellor was also justified in determining that Bill, Sr.’s primary concern was to be buried next to both his wives and he was not really operating under a fear of not being allowed to be buried next to Frances in the True plot. Accordingly, we affirm.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF YALOBUSHA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.

. While we are not bound by Novelli, we find it persuasive, given the supreme court’s prior approval of Pettigrew.