259 P.2d 795

**THEODORE v. THEODORE.**

No. 5585.

Supreme Court of New Mexico.

July 29, 1953.

O. O. Askren, Roswell, for appellant.
James T. Jennings, Roswell, for appellee.

SADLER, Chief Justice.

The plaintiff below is an appellant here. She seeks a declaratory judgment against the defendant, who is a brother of her deceased husband, upholding · her claim of right as the surviving widow of decedent to disinter his body where it lies in South Park Cemetery in the city of Roswell, New Mexico, and to inter it again in a location of her choice. After trial the court declared the plaintiff without the right claimed and that she should be enjoined from removing the body from its resting place in the cemetery where it lay. This appeal followed.

The plaintiff and decedent had been married but little more than a year at the time of his death. Both had entered into prior marriages. The deceased and his former wife, from whom he had been divorced for some years prior to his marriage to the plaintiff, were the parents of a daughter by that marriage. His sole and only heirs at law were the plaintiff, surviving wife, and Alexia Ann Skibbe, the daughter just mentioned. Within a month after marrying plaintiff, the deceased executed a will in which he left all his property, save a $10 bequest to the daughter mentioned, to his brother Gus Theodore and his sister, Katina N. Benos, who were made co-executors of his will. His wife, the plaintiff, was not mentioned in the will.

The brother and sister, Gus P. Theodore and Katina N. Benos, as executors of the estate of their brother, paid the city of Roswell $175 for a lot in South Park Cemetery described as the N½ of Lot 39, in Block 41. The deed to the lot named the plaintiff as grantee and was executed by the mayor of the city of Roswell and the city clerk in accordance with an ordinance of the city, rather than by the President of the Cemetery Board pursuant to 1941 Comp. § 14–2710, an irregularity which the trial court held rendered the instrument void and ineffective as a conveyance. In addition, although the plaintiff was named as grantee in the deed, the trial court further held there was no intention on the part of the brother, Gus Theodore, who received the deed from the hands of the undertaker, to accept same as an instrument of conveyance nor any intention on the part of the city of Roswell in executing the deed to convey title to the plaintiff.

The decedent, during his lifetime, had expressed a desire to be buried in Roswell. His wife, the plaintiff, consented and never objected to burial of his body in the lot mentioned. Indeed, she helped select the lot and intended at that time to be buried alongside him in the adjoining lot, consenting at the same time to the burial there of her husband's brother, Eddie Theodore, when he died. A headstone was placed upon the lot containing her husband's body and, at the instance of plaintiff, her name was also inscribed on the stone. When, following the reading of his will, she announced an intention to remove the body and reinter elsewhere the body of her husband, she secured the consent of his daughter to such removal.

As stated above, the trial court held failure to secure a deed to the lot executed on behalf of the cemetery association by the president of its board, as required by 1941 Comp. § 14–2710, rather than by the mayor of the city of Roswell, rendered the deed void and ineffective. Aside from the declaration of the deed's nullity on this ground, the trial court also held the deed, if otherwise valid, failed to vest title in the plaintiff for want of delivery. When the brother, Gus Theodore, who as executor along with his sister as co-executor paid $175 for the deed, for the first time learned it named the plaintiff as grantee, he immediately demurred and later consulted his attorney about having it changed. He made no delivery of the deed to plaintiff and he never had it recorded. He gave no direction to have the deed name her as grantee, though paying for it as executor with the assent of his co-executor. He did not recognize or accept it as a conveyance of title to the lot, intending to have a proper deed made out at some time later.

We think the trial court did not err in finding and holding from testimony such as that just recited that Gus Theodore did

not accept delivery of the deed on plaintiff's behalf. Consequently, title to the lot did not vest in plaintiff for want of a valid delivery of the deed purporting to convey it. 16 Am.Jur. 523. This renders it unnecessary for us to decide whether the deed was null and void as a conveyance for want of execution by the president of the cemetery board. It leaves only for determination the question whether the court properly declined to hold plaintiff entitled to disinter the body of her husband and remove it elsewhere for burial over opposition of the brother and sister of decedent who were executors of his last will and testament.

We must begin consideration of this question mindful that it does not involve the right to select the place of burial but rather to disinter the body of one already buried in a place selected with the consent of those having the right to choose a place of burial, and more especially with the consent of the one who claims the right to disinter and rebury the body elsewhere. The pertinent findings bearing on this question are as follows:

"8. That Andrew P. Theodore, during his lifetime, expressed a desire to be buried in Roswell, Chaves County, New Mexico.

"9. That the plaintiff consented and agreed to the burial of the body of her husband, Andrew P. Theodore, on the above described lot and that she helped select the lot and it was agreed at the time of the selection of the lot that she would be buried on the lot next to her husband, Andrew P. Theodore, and that her husband's brother Eddie Theodore, would also be buried on the lot.

"10. That the plaintiff never objected to the burial of the body of Andrew P. Theodore on the above described lot.

"11. That Plaintiff obtained the permission of Alexia Ann Skibbe, the daughter of the deceased, to remove said body.

"12. That a headstone was placed upon said lot by the defendant and that, at the instance of the plaintiff, plaintiff's name was inscribed upon the stone.

"13. That no compelling reason or paramount necessity exists for the removal of the body of Andrew P. Theodore from its place of interment in South Park Cemetery."

The pertinent conclusions of law read:

"3. That the plaintiff is not the owner of the N–½ of Lot 39, Block 41 South Park Cemetery, but that the plaintiff has the right by agreement with defendant to be buried on said lot next to the body of her husband, Andrew P. Theodore.

"4. That the plaintiff has waived her right to remove the body of her husband, Andrew P. Theodore, from its resting place in South Park Cemetery.

"5. That the plaintiff does not have the right to remove the body of her husband, Andrew P. Theodore, from the grave upon the above described lot and that the plaintiff, her agents, servants and employees, should be enjoined and restrained from moving the body of Andrew P. Theodore from its resting place in South Park Cemetery in the City of Roswell."

■ In determining whether authority to disinter a body and bury it elsewhere should be granted, controlling consideration seems generally to be given by the courts to the following factors, (1) the interest of the public; (2) wishes of the decedent; (3) rights and feelings of those entitled to be heard by reason of relationship; (4) the rights and principles of religious bodies or other organizations which granted the right to inter the body in the first place of burial, and (5) the question of whether or not consent was given to the burial in the first place of interment by the one claiming the right of removal. The public interest seems not to be here involved but all other material elements are.

■■ The decedent had expressed a desire to be buried at Roswell. With all parties concerned consenting, the plaintiff included, the place of burial in South Park Cemetery in Roswell was chosen. The cemetery association involved, although taking no part for or against removal, had sold the lot for his interment in which remains of decedent were buried with religious ceremonies by the church of which he was a communicant. The wishes of a decedent seem to be of great weight if his initial place of burial conform to those wishes. As said in Currier v. Woodlawn Cemetery, 300 N.Y. 162, 90 N.E.2d 18, 19, 21 A.L.R.2d 465:

"The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before distinterment is to be sanctioned. * * * And looming large among the factors to be weighed are the wishes of the decedent himself."

The same note is sounded by the annotator of the subject to be found in 21 A.L.R.2d 507, reading:

"By the same token, if the deceased is given initial interment in soil of his choice, powerful grounds must be shown in order to obtain the court's approval of change."

The case of Yome v. Gorman, 242 N.Y. 395, 152 N.E. 126, 128, 47 A.L.R. 1165, deals with the subject and we quote from the ex-

cellent opinion of the court prepared by the late Judge Cardozo while serving on the Court of Appeals of New York. The court said:

"The wishes of wife and next of kin are not always supreme and final though the body is yet unburied. * * * Still less are they supreme and final when the body has been laid at rest and the aid of equity is invoked to disturb the quiet of the grave. * * * There will then be 'due regard to the interests of the public, the wishes of the decedent, and the rights and feelings of those entitled to be heard by reason of relationship or association.' * * * The wish of the deceased, even though legal compulsion may not attach to it * * *, has at least a large significance * * *. Especially is this so when the wish has its origin in intense religious feeling. * * * *The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose."* (Emphasis ours.)

See, also, the exhaustive annotation in 21 A.L.R.2d 472, above referred to; still another annotation at 21 A.L.R.2d 651; Curlin v. Curlin, Tex.Civ.App., 228 S.W. 602; Fowlkes v. Fowlkes, Tex.Civ.App., 133 S.W.2d 241.

"Let the dead Past bury its dead." We have come to sense an air of finality in these doleful words. "Earth to earth, ashes to ashes, dust to dust"—How often, standing beside the newly made grave of some friend or loved one, have we heard intoned those fateful words? The word "bury" itself conveys the meaningful thought of finality. So much so, indeed, that when the alchemy of time once has begun the process of performing its historic function following commitment, there exists a feeling it should go endlessly on against the coming of Judgment Day.

The fact that the accident of death struck not once but twice if, indeed, not thrice, in quick succession the ranks of those disturbing the tomb of Tut-Ankh-Amen could afford only proof certain to the superstitious that an evil fate awaited those who dared disturb the sleep of the dead. While not sharing their tortured ideas, yet strongly bound by judicial precedent, as we are, we decline to enter an order which would unseal the tomb of this sleeping body. Let it sleep on wholly oblivious to the turmoil that rages above it. *Requiescat in pace*! Let the tomb remain sealed and the judgment which so directs stand affirmed.

It will be so ordered.

McGHEE, COMPTON, LUJAN and SEYMOUR, JJ., concur.