SPANICH et al., Appellees,

v.

REICHELDERFER, Appellant.

[Cite as *Spanich v. Reichelderfer* (1993), 90 Ohio App.3d 148.]

Court of Appeals of Ohio,
Montgomery County.

No. 13709.

Decided Sept. 2, 1993.

*Jeffrey D. Slyman,* for appellee Emil Spanich.

*Arthur R. Hollencamp,* for appellee Calvary Cemetery.

*Stephen E. Klein,* for appellant.

BROGAN, Judge.

Appellant, Edward Reichelderfer, appeals from the judgment of the Montgomery County Common Pleas which permanently enjoined him and the Calvary Cemetery from unearthing and removing the remains of Margaret Spanich Reichelderfer.

In two separate assignments of error, appellant contends that the trial court erred in granting the injunction, in violation of R.C. 517.23 and 517.25, and that the court's action was against the manifest weight of the evidence.

The evidence in this case is essentially not in dispute. The appellant and Margaret Reichelderfer were married on October 19, 1985 in Naperville, Illinois. In January 1987 Margaret moved to New Jersey to accept new employment. Appellant moved some six weeks later to New Jersey and lived with his wife until late 1987 or early 1988 when she moved back to her hometown in Ohio. The appellant returned to Illinois and the parties lived separately until Margaret died on November 30, 1989. The appellant testified that he and his wife kept in touch by telephone and frequent visits.

The parties' separation apparently came after Margaret learned that appellant had forged Margaret's name on over $40,000 in checks in Atlantic City, New Jersey. The appellant admitted to having a gambling problem.

During November 1989 Margaret contacted an attorney about obtaining a divorce from the appellant. She began experiencing serious emotional problems and was hospitalized. She suffered a blunt-force trauma in late November and died shortly thereafter.

Emil Spanich, Margaret's father, called appellant and informed him of Margaret's death. When appellant arrived in Dayton he was informed by Spanich of the funeral arrangements. Spanich provided the obituary information for the newspaper and neglected to include appellant's name as surviving spouse.

Emil and Agnes Spanich initially paid for Margaret's funeral and grave site and were partially reimbursed from Margaret's estate.

At the same time they purchased two grave sites adjacent to Margaret's so they could be buried next to their daughter. The Spanichs also purchased a monument which includes their name and that of their daughter.

On June 15, 1990, appellant filed exceptions to the inventory filed in Margaret's estate. He contended that three joint and survivorship accounts in Margaret's and her mother's names were not true survivorship accounts and thus should be included in the probate estate which he stood to inherit. The Montgomery County Probate Court overruled his exceptions and this court affirmed that court's decision. *In re Estate of Reichelderfer* (Apr. 28, 1992), Montgomery App. No. 12879, unreported, 1992 WL 81423.

Prior to the resolution of the litigation, appellant contacted Cavalry Cemetery in late 1990 or early 1991 inquiring about the possibility of moving Margaret's body to another grave.

The appellant denied under cross-examination that he was attempting to blackmail the Spanichs by threatening to disinter their daughter's body in order to obtain money from the Spanichs to pay a $40,000 civil judgment emanating from the forgeries. He admitted he first broached the subject of having Margaret cremated after he lost the appeal of the dispute over Margaret's estate.

He contended he merely wanted to have a funeral for Margaret in his own way since the Spanichs had not included him in the planning of his wife's funeral.

When pressed upon cross-examination as to his motives for wanting Margaret disinterred, he stated he would like the opportunity to be buried beside his wife and that was not possible at Calvary Cemetery. He admitted he had come to no final decision about disinterring his wife or what he intended to do with her body in the event he obtained permission to move her body.

In granting a permanent injunction to the appellees, the trial court made the following observation in its decision:

"After careful review, the court finds that because of the unique facts of this case and the public policy factors involved, an injunction must be granted in favor of the plaintiffs to prevent the disinterment of Margaret's body. To do otherwise would be a gross and serious violation of equity. Any other outcome would be repugnant to this court, for this court intends to uphold the longstanding public policy surrounding the sanctity of the grave, and the facts in this situation run completely contrary to this public policy.

"The court is aware of the emotionally upsetting nature of this entire situation upon Emil and Agnes Spanich. Reichelderfer has not been motivated by love, honor, or respect for the deceased or her parents. Quite the contrary, this court can only describe Reichelderfer's conduct and attitude in this entire matter as egregious, greedy, and a gross infringement of any form of decency. Therefore, the permanent injunction sought by plaintiffs in their second cause of action is hereby granted.

"* * * *

"There is also the conflict in this case between Riechelderfer and the plaintiffs because the statute states that disinterment will be allowed 'on application of the surviving spouse [ * * * ], or, if the deceased had no surviving spouse, on application of the person who assumed financial responsibility for the funeral and burial services of the deceased.' [R.C. 517.23.] In the case at bar, it was the parents, not Reichelderfer, who paid all funeral and burial bills.

"After careful consideration, the court finds that these facts do not sufficiently establish the relationship of a surviving spouse as was intended by Section 517.23, Ohio Revised Code, so as to uphold the public policy of the sanctity of the grave. To consider Reichelderfer a 'surviving spouse' under these unique circumstances would neither further the integrity of this statute nor uphold the public policy behind this statute. This fact situation would certainly not lead to the type of result intended by the legislature when they adopted the words 'surviving spouse' in place of 'next of kin', which acted to limit the number of people who are able to disinter bodies. Therefore, the court further finds that Reichelderfer cannot be

considered the surviving spouse as was intended under this statute for purposes of disinterment."

R.C. 517.23 provides in pertinent part:

"The * * * trustees or directors of any cemetery association * * * on application of the surviving spouse of the deceased * * * shall disinter * * * and deliver any body buried in such cemetery to the applicant * * *."

The appellant contends that the trial court "legislated" when it found that the appellant was not a "surviving spouse" as contemplated by the clear and unambiguous language of the statute. Appellant contends that the trial court erred because the appellees failed to prove that they had a clear legal right to the permanent injunction.

■ The courts have generally agreed that the primary and paramount rights to possession of the body of a decedent and to control of the burial or other legal disposition of the body are in the surviving spouse. The right of a surviving spouse to the custody of the dead body for purposes of burial is not an absolute right, but one which, while normally observed, is nonetheless subject to judicial control. *In re Baskin's Appeal from Probate* (1984), 194 Conn. 635, 484 A.2d 934.

In *Baskin*, the Connecticut Supreme Court was asked to construe a Connecticut statute which provided "that the 'custody and control of the remains of deceased residents shall belong to the surviving spouse of the deceased.'" The court held that a deceased's son had standing and was not foreclosed from asserting his claim to his father's body as next of kin and to present *de novo* in the trial court circumstances that would warrant overriding the wishes of the defendant's spouse and other members of the family.

■ Furthermore, the surviving spouse's right to control the burial or disposal of the decedent's body is dependent upon the peculiar circumstances of each case, and may be waived by consent or otherwise. 22A American Jurisprudence 2d (1988), Dead Bodies, Section 21.

In *Novelli v. Carroll* (1980), 278 Pa.Super. 141, 420 A.2d 469, the court held that a wife's failure to contest the location of the husband's original grave at the time of burial, when she first became aware of the distance from her home to cemetery, did not prove waiver of her right to control the disposition of her husband's body, especially where she moved for reinterment within three months of her husband's burial.

Judge Spaeth noted the following at 148–151, 420 A.2d at 472–474:

"An examination of the cases will show that in determining whether reasonable cause for reinterment has been shown, a court should first consider whether certain factors are present. This consideration will identify the distinctive

features of the particular case before the court, and will enable it to decide the case 'in equity on its own merits.' *Pettigrew v. Pettigrew* [ (1904), 207 Pa. 313] at 319, 56 A. [878] at 880.

"One of the factors to be considered is the degree of relationship that the party seeking reinterment bears to the decedent. Thus the interest of a surviving spouse or other close relative in reinterment is stronger in most cases than is the interest of someone less closely related or a total stranger. See *Leschey v. Leschey,* 374 Pa. 350, 97 A.2d 784 (1953); *Pettigrew v. Pettigrew, supra.* In this regard, the strength of the relationship may be important. In *Leschey v. Leschey, supra,* the Supreme Court stated that '[t]he reason for the preference given to the surviving spouse in the matter of interment or reinterment unquestionably is founded upon the relationship between husband and wife as the closest family tie.' 374 Pa. at 355, 97 A.2d at 787. And see *Pettigrew v. Pettigrew, supra* ('if the parties were living in the normal relations of marriage it will require a very strong case to justify a court in interfering with the wish of the survivor'). In contrast, if the husband and wife were separated before the decedent's death, the preference given to the surviving spouse may be weaker. See, *Stackhouse v. Todisco,* 370 Mass. 860, 346 N.E.2d 920 (1976). The same may be said with regard to any relative who, while close in degree of blood relationship to the decedent, was in fact not on close personal terms with the decedent.

"Another factor to be considered is the degree of relationship that the party seeking to prevent reinterment bears to the decedent. A contest between a surviving spouse and a child differs from a contest between that same spouse and someone less closely related, or a stranger. See *Pettigrew v. Pettigrew, supra; Stevens v. Ganz,* 49 Pa.D. & C.2d 286 (Lehigh 1970) (daughter against widow). In some cases, however, a stranger may have a strong interest in preventing reinterment. This is especially true in a case where reinterment would violate a rule of the religious organization that granted the right to inter the body in the first place. See *Theodore v. Theodore,* 57 N.M. 434, 259 P.2d 795 (1953), see *Intorre v. The Catholic Cemeteries Ass'n,* 112 Pitts.L.J. 510 (1964) (husband's petition to disinter wife from Catholic Cemetery refused as disinterment would violate church rule prohibiting disinterment from consecrated ground).

"Another factor to be considered is the desire of the decedent. Besides the general presumption that the decedent would not wish his remains to be disturbed, a specific statement of desire by the decedent may also be important in deciding whether to permit reinterment. Thus a decedent's express testamentary wish to be buried in the place of original interment will be a strong factor against reinterment, as will evidence of the decedent's religious belief that he should be buried in a particular place or manner. See *Theodore v. Theodore, supra; Hickey v. Hickey, supra;* 54 A.L.R.3d 1037. Conversely, however, the

decedent's desire to be buried with his family may be a factor favoring reinterment, if that desire cannot be fulfilled in the place of original interment. See *Leschey v. Leschey, supra; Hood v. Spratt,* Miss., 357 So.2d 135 (1978). The decedent's desire to be buried in a specific location may also be a factor favoring reinterment. See *Miller v. New Holland Cemetery Ass'n,* 14 Pa.D. & C.2d 735, 738 (York 1957) (husband had indicated desire, as a veteran, to be buried at Gettysburg; reinterment allowed).

"Another factor to be considered is the conduct of the person seeking reinterment, especially as it may relate to the circumstances of the original interment. If, for example, the surviving spouse chooses the original burial site, his or her later claim to a right of reinterment may be found to have been waived. See *Antonitis v. McCormick,* 2 Pa.D. & C.3d 595, 600 (Luzerne 1977). But if the surviving spouse did not agree to the site of the original interment, or did agree but under duress, or only intended the interment to be temporary, there will be no waiver. See *Hetrich v. Jordan,* 21 Cumberland 26 (1971) (temporary); *Miller v. New Holland Cemetery Ass'n, supra* (widow very upset when consented to original burial site). But see *Datz v. Dougherty,* 41 Pa.D. & C. 505 (1941) (normal grief of widow will not vitiate her consent). Similarly, if the consent to the original site was based upon the understanding that the site would be maintained so that the surviving spouse could also be buried there, and later events make it impractical to carry out that understanding, the consent to the original site may be vitiated. *See Leschey v. Leschey,* supra; *Moore v. Sheafer,* 282 Pa. 360, 127 A. 784 (1925); *Previty v. Cappuchio,* 107 R.I. 210, 266 A.2d 39 (1970).

"Another factor to be considered is the conduct of the person seeking to prevent reinterment. Suppose, for example, a widow seeking reinterment is opposed by the decedent's other relatives. If those other relatives coerced or tricked the widow into agreeing to the place of original interment, their argument against reinterment may be very weak. See *Sanson v. Sanson,* 30 Pa.Dist. 655 (1920). The same will be true if the other relatives have done something to frustrate the widow's desire to visit the gravesite or be buried there. See *Moore v. Sheafer, supra; Previty v. Cappuccio, supra.*

"Another factor to be considered is the length of time that has elapsed since the original interment. · Generally, the sooner the person seeking reinterment acts after the original interment, the better the chance of obtaining reinterment. See *Hickey v. Hickey, supra; Fox v. Gordan,* 16 Phila. 185 (1883). In this regard, the number of times the body has already been reinterred may be important.

"Finally, another factor to be considered is the strength of the reasons offered both in favor of and in opposition to reinterment. If the person seeking or

opposing reinterment does so to harass another, his case will be very weak. See *Hickey v. Hickey, supra.* However, if the reason offered for reinterment is that the area around the graveside has changed, or that the original plan to have the family buried together is no longer possible, the reason may be quite compelling. See *Leschey v. Leschey, supra; Moore v. Sheafer, supra.* If the reason offered for reinterment is the greater ease with which the surviving spouse may then visit and care for the grave, the reason, while not compelling, in nevertheless valid. See *Brake v. Mother of God's Cemetery,* 251 Ky. 667, 65 S.W.2d 739 (1933); *Neighbors v. Neighbors,* 112 Ky. 161, 65 S.W. 607 (1901). But see, *Ferrel v. Ferrel,* 503 S.W.2d 389 (Tex.Civ.App.1973).

"After the court has identified the factors present in the particular case, it should appraise these factors as they bear upon each other. As Judge CARDOZO stated, after discussing the kinds of factors to be considered: 'We have sought, not to declare a rule, but to exemplify a process. The considerations we have instanced and others of like order may move a court of equity to keep the grave inviolate against the will of the survivors. They are none of them so absolute, however, that they may not be neutralized by others.' *Yome v. Gorman,* 242 N.Y. 395, 403–05, 152 N.E. 126, 129 (1926)."

The Supreme Court of Utah has held that an executor who knew of the will and of the provision therein regarding cremation and of his right and duty in that regard pursuant to statute, and who had an effective and expeditious means of carrying out that directive, but who failed to act and permitted the mother and family to arrange and carry out a burial of the deceased's remains in a cemetery, was deemed to have waived any right conferred in a will to direct the disposal of the deceased's remains. *In re Estate of Moyer* (Utah 1978), 577 P.2d 108.

Justice Crockett noted the following at 110–111:

"Since the most ancient of times people have had a reverent regard for the remains of their loved ones, especially of children for their parents and parents for their children; and this naturally includes an ardent desire that their remains be treated with respect and allowed to remain in undisturbed peace and rest. It is therefore a sound and well-established policy of the law that a person, once buried, should not be exhumed except for the most compelling of reasons. Consistent with that policy, upon our analysis of the undisputed facts shown here, it is our opinion that it should be ruled as a matter of law that because of his failure to timely act thereon, the executor should be deemed to have waived any right conferred in the will to direct the disposal of the deceased's remains and that he should remain buried where he is.

"Our conclusion as just stated on the issue of waiver renders it unnecessary to consider the appellant's (objector's) further contentions."

■ We believe that R.C. 517.23 merely reflects the legislature's recognition of the universal rule of preference given the surviving spouse in the matter of interment or reinterment. We do not believe the statutory right is an absolute one or that a court is powerless to use its equitable powers to prevent the abuse of the disinterment statute by a surviving spouse. Taking appellant's argument that he has an absolute right to disinter his deceased spouse's body pursuant to the plain language of R.C. 517.23 to its logical conclusion, there is nothing in this statute which prevents him from disinterring his deceased wife annually and burying her at various cemeteries throughout Ohio.

■ In granting the permanent injunction, the trial court took note of the appellant's tenuous relationship with his wife prior to her death. The court noted that the parties seeking to prevent reinterment were the deceased's parents who bore a very close and loving relationship with their daughter. The court noted that appellant "did not appear to object to the burial place for well over two years." The trial court also noted that there was no evidence that the Spaniches' coerced the appellant into agreeing to the place of interment. Indeed the appellees appear to have buried their daughter because she was no longer living with appellant and was in their care at the time of her death. There also is no evidence that appellant was in a financial position to pay for his wife's funeral and burial. The trial court also noted that appellant's motives for reinterment were not love, honor or respect for the deceased, but that his conduct was "egregious, greedy, and a gross infringement of any form of decency."

The trial court apparently found convincing the contentions of the appellees that the appellant was attempting to "blackmail" them into compromising the litigation over their daughter's estate.

There is present in this record substantial, relevant and probative evidence to support the trial court's conclusion that the appellant waived his rights to disinter his wife by failing to object to her place of burial for nearly two years.

Waiver is a particularly appropriate principle to apply in the interpretation of the disinterment statute. Time has a way of gently healing the loss of a loved one. The disinterment of the Spaniches' daughter would surely cause them to revisit the acute pain they must have felt upon her untimely death.

The appellants' two assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.