**In re DISINTERMENT OF FROBOSE.**

[Cite as *In re Disinterment of Frobose,* 163 Ohio App.3d 739, 2005-Ohio-5025.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–04–080.

Decided Sept. 23, 2005.

Christopher J. Moell, for appellant.

Steven R. Fansler, for appellee.

SINGER, Presiding Judge.

{¶ 1} This appeal comes to us from a judgment issued by the Wood County Court of Common Pleas, Probate Division, granting appellee's application to prevent the disinterment of his father, Richard L. Frobose. Because we conclude that the trial court did not abuse its discretion in denying appellant's request for disinterment, we affirm.

{¶ 2} Appellant, Linda K. Frobose, sought to disinter and relocate the remains of Richard L. Frobose, her deceased husband, from Fish Cemetery in Wood County, Ohio, to another cemetery located in Hancock County, Ohio. Richard's son, Jarrod R. Frobose, filed an application in the Wood County Probate Court to prevent disinterment. The trial court conducted a full hearing with many witnesses and issued the following factual findings pertinent to this appeal.

{¶ 3} Following several years of dating, Linda and Richard had been happily married for approximately seven months prior to his unexpected death. Richard and Jarrod had maintained a good father-son relationship. Linda, Jarrod, and other family members mutually agreed to bury Richard in Fish Cemetery in Wood County, where at least 274 Frobose relatives are also buried.

{¶ 4} After the burial site was chosen, Jeff Frobose, one of Richard's brothers, purchased a number of burial plots in Fish Cemetery, and those plots were subsequently divided among several Frobose family members. One deed for four plots was titled in Jarrod's name, and all parties agreed that two of those plots were for Richard and Linda.

{¶ 5} Following the burial, Linda stayed at the farm in West Liberty, Champaign County, Ohio, where the couple had resided prior to Richard's death. As executor of his father's estate, Jarrod assisted Linda in maintaining and operating the farm during this time. Also during this time, he was on active duty with the United States military, stationed near Columbus, Ohio. Since Jarrod was designated as Richard's sole beneficiary, in fall 2003, Linda elected to take against Richard's will. In November 2003, Linda also moved out of the marital residence at the farm and returned to Findlay, Ohio.

{¶ 6} After Richard's burial, Linda prepared to choose a monument for Richard's grave. According to Linda, Jarrod had left the decision to her and had voiced no objections. She selected and purchased for $5,000 a "companion monument," which was to be placed over her burial plot as well as Richard's. The monument company advised Linda that they needed permission from Jarrod to set the monument, because the plots were deeded in his name. By this time, however, direct communication between Linda and Jarrod had ceased.

{¶ 7} On May 7, 2004, Linda's lawyer sent Jarrod a letter demanding that he immediately authorize the headstone placement, that he deed Richard and Linda's two plots over to Linda, and that he authorize the release of the Veterans Administration plaque for installation on the monument. Jarrod did not receive this letter until several days prior to the action deadline of May 19, 2004. Jarrod requested a ten-day extension, but did not formally respond until June 25, 2004, with a letter acquiescing to all of Linda's demands. In addition, his letter included an offer to deed to Linda all four of the plots titled in his name.

{¶ 8} Linda, who had already begun disinterment proceedings, rejected Jarrod's response. At the hearing, she stated that she would not accept Jarrod's agreement to her demands because she "no longer felt welcomed by the Frobose family and would not feel comfortable being buried in Fish Cemetery." The cemetery where Linda wishes reinterment has no connection to Richard, Linda, their former county of residence, or their families.

{¶ 9} The only evidence as to Richard's wishes regarding his burial site was offered by Jarrod. During a trip to a national military cemetery, Richard had said he did not want to be buried there, but preferred to be buried "up home." The court found that the burial site proposed by Linda could not be classified as "home," since it is not near either Wood County, where Richard maintained many strong ties and where many of his family members are buried, or Champaign County, his home county at the time of his death.

{¶ 10} The court further found that no Frobose family members had taken any actions to prevent Linda from going to Fish Cemetery and that no one objected to her being buried next to Richard. Richard's sisters expressed surprise at Linda's own lack of communication with them prior to the disinterment proceed-

ings. The court further found that any lack of communication by Jarrod was not motivated by spite or ill will, but rather was due to his many other obligations and duties. Finally, the court noted that, having observed the demeanor of the witnesses, it had "significant questions concerning the true motivations of Linda," especially since Jarrod had agreed to all her demands and in light of the lack of any connection between any party and the proposed new cemetery. The court found that Linda's concerns about not being welcome at the cemetery or not being able to "rest in peace" there were not supported by any credible, corroborating evidence.

{¶ 11} The court then weighed many factors, and ultimately granted Jarrod's application to prevent the disinterment of Richard's body. Linda now appeals from that judgment, setting forth the following sole assignment of error:

{¶ 12} "The Trial Court erred in granting Appellee Jarrod R. Frobose's Application to Prevent Disinterment."

{¶ 13} R.C. 517.23(A)(1) permits a person to disinter his or her deceased spouse's body by filing an application with the board of township trustees controlling the cemetery where the body was buried. The applicant must bear the reasonable costs and expense of disinterment and must follow the requirements set forth in R.C. 517.24(A).

{¶ 14} R.C. 517.23(E)(1) states that any "person who is an interested party and who is eighteen years of age or older and of sound mind may apply to the probate court of the county in which the decedent is buried for an order to prevent the decedent's surviving spouse from having the remains of the decedent disinterred." An application to prevent the disinterment of the remains of the decedent must also include certain information, including a statement of the applicant's reasons for opposing the disinterment of the remains of the decedent. See R.C. 517.23(E).

{¶ 15} The primary rights to possession and control of the legal disposition of the body of a decedent generally reside in the surviving spouse. *Spanich v. Reichelderfer* (1993), 90 Ohio App.3d 148, 152, 628 N.E.2d 102. Nevertheless, for purposes of burial, this right is not absolute, but is subject to judicial control. Id., citing *In re Baskin's Appeal from Probate* (1984), 194 Conn. 635, 484 A.2d 934. Well-established public and legal policy has been that a person, once buried, should not be exhumed except for the most compelling reasons. See *Spanich*, 90 Ohio App.3d at 155, 628 N.E.2d 102, citing *Yome v. Gorman* (1926), 242 N.Y. 395, 152 N.E. 126. Thus, the surviving spouse's right to control the burial or disposal of the decedent's body is dependent upon the peculiar circumstances of each case and may be waived by consent or otherwise. *Spanich*, 90 Ohio App.3d at 155, 628 N.E.2d 102.

{¶ 16} In determining a request for disinterment, courts have applied an equity standard, considering and weighing several factors. See *Spanich*, supra; *In re Disinterment of Ervin* (Mar. 31, 1997), 4th Dist. No. 96 CA 2466, 1997 WL 156625; *Dyer v. Dyer* (Dec. 6, 1982), 7th Dist. No. 378, 1982 WL 6218. These equitable factors include, but are not limited to (1) the degree of relationship that the party seeking reinterment bears to the decedent, (2) the degree of relationship that the party seeking to prevent reinterment bears to the decedent, (3) the desire of the decedent, (4) the conduct of the person seeking reinterment, especially as it may relate to the circumstances of the original interment, (5) the conduct of the person seeking to prevent reinterment, (6) the length of time that has elapsed since the original interment, and (7) the strength of the reasons offered both in favor of and in opposition to reinterment. *Spanich*, 90 Ohio App.3d at 152–155, 628 N.E.2d 102, citing *Novelli v. Carroll* (1980), 278 Pa.Super. 141, 420 A.2d 469.

{¶ 17} A probate court's decision regarding the request for disinterment may not be reversed absent an abuse of discretion. See *In re Disinterment of Ervin*, 4th Dist. No. 96 CA 2466, 1997 WL 156625. See, also, R.C. 517.24(3)(a).[1] An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 18} In this case, though it was not required under R.C. 517.23, the trial court conducted a hearing, permitting extensive and detailed testimony regarding the circumstances surrounding the disinterment application. We have carefully examined the hearing transcript and conclude that the trial court's factual findings are accurate and are supported by the record. We will now examine the *Spanich* factors that the trial court considered and applied to the facts presented.

{¶ 19} The first two factors are (1) the degree of relationship that the party seeking reinterment bears to the decedent and (2) the degree of relationship that the party seeking to prevent reinterment bears to the decedent. In this case, two of the closest possible relationships are involved: a spouse and a son. Although R.C. 517.23 specifically provides for disinterment at a spouse's request,

---

1. R.C. 517.24(B) provides that the trial court's ultimate decision regarding disinterment is based upon the weighing of evidence and an abuse-of-discretion standard. We acknowledge that that section is applicable to only *nonspousal* requests for disinterment. Although not specifically delineated, however, the abuse-of-discretion standard is also applicable in this case, because the court's decision made under an R.C. 517.23(E) challenge to a spouse's request also requires the equitable weighing of factors.

the marital relationship or other factors surrounding the circumstances may have a bearing upon whether the spouse's request should be granted. Since a spouse's rights are not absolute, we conclude that the spouse's wish concerning the location of burial is just one of many factors to be considered.

{¶ 20} The third factor is the desire of the decedent. As the trial court noted, the only specific evidence offered was Richard's comments to his son while at Arlington National Cemetery in Washington, D.C. We do note, however, that evidence was presented that, in addition to being married in Ohio, Linda and Richard flew to Germany to be married in a ceremony at the Frobose ancestral German Lutheran Church. In our view, this fact supports the conclusion that Richard thought highly of tradition and family ties, thus favoring the burial site in Fish Cemetery.

{¶ 21} The fourth factor is the conduct of the person seeking reinterment, especially as it may relate to the circumstances of the original interment. Linda agreed to and was happy with the original choice of Fish Cemetery. Only after the difficulties with the headstone and certain perceived slights by Frobose family members did she become unhappy with this choice.

{¶ 22} The fifth factor in *Spanich* is the conduct of the person seeking to prevent reinterment. In this case, Jarrod arguably may have been upset with the estate proceedings, with Linda's alleged nonpayment of household bills, and with her cancellation of auto insurance on farm vehicles. The trial court specifically found, however, that his delayed response to Linda's demands was not intentional. Rather, the court attributed his lack of promptness to his various obligations and duties, which, according to the testimony, included being executor of Richard's estate, maintaining and seeking financing to purchase the farm, and performing his military duties. Thus, nothing indicates that Jarrod's action to prevent disinterment was motivated by anything but the desire to keep his father's body in the cemetery originally agreed upon.

{¶ 23} The sixth factor, the length of time that has elapsed since the original interment, is not a factor that would hinder Linda's request for disinterment. At the time she filed her application, Richard had been buried for a little less than a year, which, as noted by the trial court, was not an excessive length of time.

{¶ 24} Finally, the seventh *Spanich* factor is the strength of the reasons offered both in favor of and in opposition to reinterment. When determining whether to permit the disinterment of Richard's body, Linda's wish was only one of several factors to consider. At the time of the burial, Linda was in agreement with and was not tricked or fooled into burying Richard in Fish Cemetery. Although Linda may have had compelling, valid reasons at the time she applied for the disinterment, i.e., the inability to own her own burial plot or to set the headstone she had purchased, those reasons ceased to exist in June 2004. About

one month after Linda's deadline, Jarrod completely acquiesced to her demands, even offering her ownership of all four plots, not just the two originally intended for Richard and herself. The only remaining reason offered in favor of reinterment is Linda's alleged inability to "rest in peace" in Fish Cemetery after all the "commotion." Although this court is sympathetic to Linda's feelings of possible residual discomfort related to her will contest or her perceptions that Frobose family members are slighting her in some way, she herself chose to move away from the family long before the problems began. After reviewing the testimony of the family members, we cannot say that any events took place that would be sufficient to justify disinterment. We also note that the trial court specifically questioned the genuineness and validity of Linda's motives, since no impediment exists to prevent her burial next to Richard or her ownership of the plots, and the cemetery she chose for reinterment had no connections to anyone involved.

{¶ 25} On the other hand, the record contains strong factors in favor of preventing disinterment: Richard's continued ties to the Freedom Township community even though he had lived elsewhere for 30 years; the burial of his relatives, including parents and grandparents, in Fish Cemetery (approximately half the people buried in Fish Cemetery are Frobose relatives); the close proximity of this cemetery to living relatives; and Linda's initial agreement to this site. These factors, which had a significant impact on the trial court's determination, all weigh heavily in favor of preventing disinterment.

{¶ 26} Therefore, after examining the record and considering the applicable law and factors, we cannot say that the court abused its discretion in denying appellant's request to disinter Richard's body.

{¶ 27} The judgment of the Wood County Court of Common Pleas, Probate Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment affirmed.

PIETRYKOWSKI and SKOW, JJ., concur.