[Cite as *In re Estate of Eisaman*, 2018-Ohio-1112.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:  THE ESTATE OF:

    WILLIAM R. EISAMAN, JR.

[LINDA L. BADGETT - APPELLANT]

CASE NO.  5-17-30

O P I N I O N

**Appeal from Hancock County Common Pleas Court**
**Probate Division**
**Trial Court No. 20171004**

**Judgment Affirmed**

**Date of Decision:   March 26, 2018**

APPEARANCES:

    *Howard A. Elliott and Jeff Whitman for* **Appellant**

    *Christie L. Ranzau* **for Appellee**

**PRESTON, J.**

{¶1} Petitioner-appellant, Linda L. Badgett ("Linda"), appeals the October 11, 2017 judgment entry of the Hancock County Common Pleas Court, Probate Division, denying her petition to disinter the remains of her brother, William R. Eisaman, Jr. ("William"). For the reasons that follow, we affirm.

{¶2} William died on December 15, 2016 and is survived by his wife, respondent-appellee, Charlene Eisaman ("Charlene"). (Doc. No. 3). On December 19, 2016, William was buried at Arcadia Cemetery in Arcadia, Ohio. (*Id.*).

{¶3} On July 11, 2017, Linda sent a letter to Charlene's attorney informing Charlene that "the cemetery plot in Arcadia, Ohio, beside [William], is not available for [Charlene's] burial." (Doc. No. 54); (Respondent's Ex. A). The letter indicated that the deed to the family burial plot at Arcadia Cemetery was "being changed to read, 'The Badgett Family Trust' which excludes Charlene from being buried there." (*Id.*).

{¶4} Charlene consulted with Coldren-Crates Funeral Home and her attorney to determine whether she could reinter William's remains in a different cemetery so that she could be buried beside him. (*See* Doc. No. 54). On August 9, 2017, William's remains were disinterred and reburied at a cemetery in Van Buren, Ohio. (*Id.*).

{¶5} On August 30, 2017, Linda filed a petition with the trial court requesting that William's remains be disinterred from Van Buren and reinterred at Arcadia Cemetery. (Doc. No. 45). Charlene filed a memorandum in opposition to Linda's petition on September 25, 2017. (Doc No. 53).

{¶6} Following a bench trial on October 3, 2017, the trial court issued its judgment on October 11, 2017 denying Linda's petition. (Doc. No. 54).

{¶7} On November 1, 2017, Linda filed a notice of appeal. (Doc. No. 58). She raises one assignment of error.

### Assignment of Error

**The Hancock County Probate Court abused its discretion in failing to order the reinternment [sic] of the decedent where said decedent had previously been disinterred, contrary to the wishes of the decedent and the previously granted consent given by the widow to his original interment.**

{¶8} In her sole assignment of error, Linda argues that the trial court erred by denying her petition to disinter William's remains. In particular, Linda contends that because William specifically desired to be buried at Arcadia Cemetery and because Charlene originally consented to interring William at Arcadia Cemetery, the trial court abused its discretion by denying her petition to exhume William's remains from Van Buren and reinter them at Arcadia Cemetery.

{¶9} "'When reviewing a civil appeal from a bench trial, we apply a manifest weight standard of review.'" *Lump v. Larson*, 3d Dist. Logan No. 8-14-14, 2015-

Ohio-469, ¶ 9, quoting *San Allen, Inc. v. Buehrer*, 8th Dist. Cuyahoga No. 99786, 2014-Ohio-2071, ¶ 89, citing *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, ¶ 5 (8th Dist.). "'[A] civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."'" *Id.*, quoting *Warnecke v. Chaney*, 194 Ohio App.3d 459, 2011-Ohio-3007, ¶ 13 (3d Dist.), quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶10} "'"'[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct.'"'" *Id.* at ¶ 10, quoting *Warnecke* at ¶ 13, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. "'"The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures.'" *Id.*, quoting *Warnecke* at ¶ 13, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'"A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.'"'" *Id.*, quoting *Warnecke* at ¶ 13, quoting *Seasons Coal Co.* at 81. "'"A finding of an error in law is a legitimate ground for reversal,

but a difference of opinion on credibility of witnesses and evidence is not.""" *Id.*, quoting *Warnecke* at ¶ 13, quoting *Seasons Coal Co.* at 81.

**{¶11}** R.C. 517.23 and 517.24 govern the procedures for the disinterment and reinterment of human remains. R.C. 517.23, in relevant part, provides:

> [T]he board of township trustees, the trustees or directors of a cemetery association, or the other officers having control and management of a cemetery or the officer of a municipal corporation who has control and management of a municipal cemetery shall disinter or grant permission to disinter any remains buried in the cemetery * * * [o]n order of a probate court issued under division (B) of section 517.24 of the Revised Code * * *.

R.C. 517.23(A)(2). Under R.C. 517.24(B)(1)

> [a]ny person who is eighteen years of age or older and of sound mind, * * * and who wishes to obtain a court order for the disinterment of the remains of the decedent may file an application in the probate court of the county in which the decedent is buried requesting the court to issue an order for the disinterment of the remains of the decedent.

After the filing of an application for disinterment, the probate court must promptly

conduct a hearing to determine whether to issue an order for disinterment of the remains of the decedent. Except as otherwise provided in division (B)(3)(a) of this section, at the hearing, the court, in its discretion, may issue an order for disinterment of the decedent's remains if good cause for disinterment is shown.

R.C. 517.24(B)(3)(a).

{¶12} "Well-established public and legal policy has been that a person, once buried, should not be exhumed except for the most compelling reasons." *In re Disinterment of Frobose*, 163 Ohio App.3d 739, 2005-Ohio-5025, ¶ 15 (6th Dist.), citing *Spanich v. Reichelderfer*, 90 Ohio App.3d 148, 155 (2d Dist.1993), citing *Yome v. Gorman*, 242 N.Y. 395 (1926). This general policy is exemplified in the requirement that good cause for disinterment must be demonstrated before the probate court may issue an order for disinterment. *See* R.C. 517.24(B)(3)(a).

{¶13} In determining contested requests for disinterment, Ohio courts of appeal apply a flexible, multifactor-equitable standard. *See In re Disinterment of Swing*, 6th Dist. Lucas No. L-14-1036, 2014-Ohio-5454, ¶ 16, citing *Frobose* at ¶ 16; *Spanich* at 152-155; *In re Disinterment of Ervin*, 4th Dist. Scioto No. 96 CA 2466, 1997 WL 156625, *2 (Mar. 31, 1997). These factors include:

> (1)  the degree of relationship that the party seeking reinterment bears to the decedent, (2) the degree of relationship that the party seeking to prevent

reinterment bears to the decedent, (3) the desire of the decedent, (4) the conduct of the person seeking reinterment, especially as it may relate to the circumstances of the original interment, (5) the conduct of the person seeking to prevent reinterment, (6) the length of time that has elapsed since the original interment, and (7) the strength of the reasons offered both in favor of and in opposition to reinterment.

*Frobose* at ¶ 16, citing *Spanich* at 152-155, citing *Novelli v. Carroll*, 278 Pa.Super 141 (1980).

{¶14} "A probate court's decision regarding the request for disinterment may not be reversed absent an abuse of discretion." *Frobose* at ¶ 17, citing *Ervin* at *2. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶15} The trial court summarized its decision to deny Linda's petition thusly: "After weighing the *Frobose* factors, acknowledging the public policy that a person's remains should not be exhumed except for the most compelling reasons, and in light of the clear preference in the law favoring the surviving spouse, the Court hereby DENIES Linda Badgett's request to have the remains of William Eisaman exhumed." (Emphasis sic.) (Doc. No. 54). The trial court's analysis centered on five of the equitable factors outlined in *Frobose*.

{¶16} First, the trial court assessed the first two factors identified in *Frobose*—the degree of relationship between the decedent and the party seeking reinterment and the degree of relationship between the decedent and the party opposing reinterment. The trial court found that Charlene was William's wife of 27 years, whereas Linda was William's biological sister. (*Id.*). The trial court denied Linda's petition, in part, because of "the clear preference in the law favoring the surviving spouse." (*Id.*).

{¶17} The trial court then evaluated the third *Frobose* factor—the desires of the decedent. The trial court found that there is no dispute that William specifically chose Arcadia Cemetery as his burial site. (*Id.*). However, based on Charlene's testimony concerning William's wishes, the trial court found that William also had a strong desire to be buried alongside Charlene. (*Id.*). The trial court emphasized that it is clear that "[William's] intention was to buried at Arcadia Cemetery next to his wife." (*Id.*).

{¶18} Next, the trial court examined the fourth *Frobose* factor—the conduct of the party seeking reinterment. The trial court remarked that "it was the letter from Linda Badgett in July, 2017 that started this whole case in motion." (*Id.*). The trial court also noted that Charlene did not take steps to disinter and rebury William's remains until she received the letter from Linda explaining that she could not be buried next to William in the family plot at Arcadia Cemetery. (*Id.*). The

trial court stated that it could not "ignore that had the July letter not been sent, William Eisaman would likely still be in his original resting place." (*Id.*).

{¶19} Finally, the trial court considered the fifth *Frobose* factor— the conduct of the party opposing reinterment. The trial court observed that "[Charlene] had [William's] remains exhumed and reburied in Van Buren, Ohio so that at least they could be buried together." (*Id.*).

{¶20} After reviewing the record, we conclude that the trial court's analysis of the factors described in *Frobose* is supported by some competent, credible evidence.

{¶21} As to the first and second *Frobose* factors, the record supports the trial court's conclusion that Charlene's relationship to William as his surviving spouse merited more weight than Linda's relationship to William as his sister. (*See* Oct. 3, 2017 Tr. at 8, 42). (*See* Petitioner's Ex. 1). "'[T]he interest of a surviving spouse * * * in reinterment is stronger in most cases than is the interest of someone less closely related * * *.'" *Spanich*, 90 Ohio App.3d at 153, quoting *Novelli*, 278 Pa.Super. at 148. However, the interests of a surviving spouse may not defeat the rights of another interested party in the disposition of a decedent's remains in every instance. *See, e.g.*, *id.* at 153 (noting that "if the husband and wife were separated before the decedent's death, the preference given to the surviving spouse may be weaker"), quoting *Novelli* at 148, citing *Stackhouse v. Todisco*, 370 Mass. 860

(1976). In this case, there is no competent, credible evidence in the record suggesting that William and Charlene's marriage was strained, that the two were on bad terms when William died, or that there is any other reason to deny Charlene the preference usually accorded to surviving spouses.

**{¶22}** The record also supports the trial court's conclusion that William strongly desired to be buried next to Charlene. Charlene testified that it was William's intent that they be buried next to one another. (*See, e.g.*, Oct. 3, 2017 Tr. at 29, 44-47). Because the trial court was in the best position to assess Charlene's credibility in testifying about William's desires, this court will not cast doubt on the trial court's decision to accept Charlene's testimony. *See Seasons Coal Co.*, 10 Ohio St.3d at 80.

**{¶23}** Moreover, there is competent, credible evidence supporting the trial court's conclusion as to the fourth *Frobose* factor—that Linda's conduct weighed against disinterring William's remains. Linda's July 11, 2017 letter left no doubt that Charlene would not be allowed to be buried in the family plot next to William. (*See* Respondent's Ex. A). The letter claimed that, as of July 2017, title to the plot still remained in the name of William and Linda's deceased father and that a restriction in their father's will precluded their spouses from being buried in the plot. (*See* Respondent's Ex. A). (*See also* Oct. 3, 2017 Tr. at 22). Linda testified that she has since resolved the problem by titling the plot in the name of the "Badgett Family

Trust" and that Charlene is now allowed to be buried there. (Oct. 3, 2017 Tr. at 20-24). Yet, the letter unambiguously states that Charlene was not allowed to be buried in the Arcadia Cemetery plot *because* it was going to be retitled in the name of the trust. (Respondent's Ex. A) ("[T]he deed is being changed to read, 'The Badgett Family Trust' which excludes Charlene from being buried there."). Linda also testified that she is not opposed to Charlene being buried in the family plot at Arcadia Cemetery. (Oct. 3, 2017 Tr. at 20-24). However, the trial court found that Linda's testimony concerning her change of heart was disingenuous and that her objection to Charlene's burial in the family plot at Arcadia Cemetery softened only in the face of litigation. (Doc. No. 54). As with Charlene's testimony, this court is not in a position to second guess the trial court's determination regarding Linda's sincerity. *See Seasons Coal Co.* at 80. As such, there is competent, credible evidence supporting the trial court's conclusion that Linda's attempt to block Charlene from being buried in the family plot at Arcadia Cemetery weighed against disinterment. *See Spanich* at 154 (noting that a relative's position in disinterment proceedings may be very weak if the relative has "'done something to frustrate the widow's desire to visit the gravesite or be buried there'"), quoting *Novelli* at 150.

{¶24} Lastly, the trial court's treatment of Charlene's conduct—the fifth *Frobose* factor—is supported by some competent, credible evidence. On appeal, Linda argues that because the evidence in the record weighs heavily in her favor

regarding the fifth *Frobose* factor, the trial court erred by concluding that the *Frobose* factors weighed against disinterring William's remains. That is, Linda argues that three examples of Charlene's conduct weigh in favor of disinterring William's remains and returning them to Arcadia Cemetery.

**{¶25}** First, Linda points to the fact that there is no evidence in the record that Charlene submitted a written application for disinterment to the Arcadia Cemetery Board as required under R.C. 517.23 and 517.24.[1] While the issue of whether Charlene complied with the proper procedures to disinter William's remains is relevant to whether Charlene's conduct weighs in favor of disinterment, the record reflects that Charlene undertook a good-faith effort to adhere to these procedures when she sought to disinter William's remains.[2] Charlene testified that she consulted with Coldren-Crates Funeral Home and with her attorney about the steps she needed to take to disinter William's remains and that she "made the necessary arrangements" to do so. (Oct. 3, 2017 Tr. at 28-30, 47). Based on that evidence, the trial court found that Coldren-Crates Funeral Home had William's remains disinterred without providing Charlene with any "further information as to

---

[1] R.C. 517.24(A) provides that "[a]n application by a surviving spouse for disinterment under [R.C. 517.23] shall be in writing and shall state that the applicant is the surviving spouse of the decedent, that the applicant is eighteen years of age or older and of sound mind, the disease of which the decedent died, and the place at which the remains shall be reinterred. The application shall be subscribed and verified by oath."

[2] Because this appeal concerns whether the trial court properly denied Linda's petition to disinter William's remains from Van Buren and not whether Charlene followed the proper procedures to disinter William's remains in the first place, we do not rule on the question of whether the steps Charlene took to disinter William's remains from Arcadia will generally suffice under R.C. 517.23 and 517.24.

how that process was done." (Doc. No. 54). Thus, competent, credible evidence supports that Charlene did not deliberately skirt the prescribed procedures.

{¶26} Second, Linda points to the fact that Charlene did not notify Linda or any other member of William's family that William's remains were being exhumed and reburied in Van Buren. Ideally, Charlene would have informed Linda and William's family of her intentions. However, the trial court correctly noted that neither R.C. 517.23 nor 517.24 require a surviving spouse to notify anyone of their plans to disinter the remains of their deceased spouse. (*See* Doc. No. 54).

{¶27} Finally, Linda argues that Charlene consented to William's burial at Arcadia Cemetery and thus waived her rights to have him interred anywhere else. If the surviving spouse chooses or assents to the choice of the original burial site, "'her later claim to a right of reinterment may be found to have been waived.'" *Spanich*, 90 Ohio App.3d at 154, quoting *Novelli*, 278 Pa.Super. at 149. Nonetheless, "'if the consent to the original site was based upon the understanding that the site would be maintained so that the surviving spouse could also be buried there, and later events make it impractical to carry out that understanding, the consent to the original site may be vitiated.'" *Id.*, quoting *Novelli* at 150. Here, Charlene's consent to William's interment at Arcadia Cemetery was ostensibly conditioned on the understanding that, when she died, she would be buried next to William in the family plot, a condition which was effectively nullified by Linda's

July 11, 2017 letter. (*See* Oct. 3, 2017 Tr. at 44-45, 59). Thus, it is unlikely that Charlene would have been barred from reinterring William's remains by operation of waiver.

{¶28} Although the trial court heard testimony and received evidence responsive to each of these three concerns about Charlene's conduct, it did not conclude that Charlene acted indecently or with ill-intent by reinterring William in Van Buren. (*See* Doc. No. 54). In sum, there is competent, credible evidence supporting the trial court's conclusion that Charlene did not act outside the bounds of acceptable conduct.

{¶29} In light of the foregoing, there is competent, credible evidence supporting the trial court's application of the factors described in *Frobose*. Therefore, the trial court's decision that those factors weighed against disinterring William's remains is not against the manifest weight of the evidence. Accordingly, the trial court did not abuse its discretion in denying Linda's petition.

{¶30} Linda's assignment of error is, therefore, overruled.

{¶31} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**