[Cite as *In re Disinterment of Swing*, 2014-Ohio-5454.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Disinterment of Jean E. Swing

Court of Appeals No. L-14-1036

Trial Court No. 2012 DIS 2324

**DECISION AND JUDGMENT**

Decided: December 12, 2014

* * * * *

Thomas G. Pletz, for appellants.

Alan Kirshner, for appellee.

* * * * *

**YARBROUGH, P.J.**

## I. Introduction

{¶ 1} Appellants, John Swing, Sr., and Michael Swing, appeal the judgment of the Lucas County Court of Common Pleas, Probate Division, granting a Disinterment Application filed by appellee, Michael Swing, III. We affirm.

## A. Facts and Procedural Background

{¶ 2} The underlying facts in this case are undisputed. Thus, the issue is whether the probate court erred in granting appellee's application to have the cremains of his father, John Swing, Jr., disinterred and transferred to him. John Swing, Sr. and Michael Swing are appellee's grandfather and uncle, respectively. John Swing, Sr. opposes appellee's application in his individual capacity and as executor of the estate of Jean Swing (Swing Sr.'s wife) and John Swing, Jr. Since appellee is a minor, his application for disinterment was filed through his mother, Penny Pepper.

{¶ 3} On March 14, 2007, Swing, Jr. died and was subsequently cremated. Swing, Sr., who paid for the majority of the cremation and funeral services, received a summary release from administration from the probate court, at which point he took possession of Swing, Jr.'s only asset, a 1991 Dodge van. Appellee, being a minor at the time, was not listed as next of kin on the probate documents. Consequently, Swing, Jr.'s cremains were given to Swing, Sr. and Jean Swing.

{¶ 4} Sometime after his father's death, appellee attended an event at Swing, Sr.'s home where he saw a box containing Swing, Jr.'s cremains. Appellee testified that he requested his father's cremains at that time. However, Jean told appellee, "your dad's going to stay with me, because he's my baby."

{¶ 5} On September 22, 2009, Jean passed away. Prior to Jean's burial, appellee once again requested Swing, Jr.'s ashes, but his request was denied by Swing, Sr. and Michael. Instead of allowing appellee to have his father's ashes, Michael asked a funeral

2.

home worker to place the ashes inside Jean's casket. Having no knowledge of the ashes inside the casket, the cemetery workers proceeded to bury the casket according to normal procedures. The burial was performed in contravention of cemetery policy requiring a permit to bury two people in one grave. Further, Swing, Jr. is not listed on Jean's headstone.

{¶ 6} Three years after Jean's burial, appellee engaged in an internet conversation with his cousin, Mallory (Michael's daughter), regarding Swing, Jr.'s cremains. He expressed a desire to have his father close to him so that he could talk to his father. However, Mallory informed appellee that he would need to visit Jean's grave because Swing, Jr.'s cremains were buried there. This was the first time appellee or Pepper had heard that Swing, Jr.'s cremains were buried alongside Jean's body.

{¶ 7} Eventually, on October 25, 2012, Pepper filed an application for disinterment on behalf of appellee. A hearing was held on the application before a magistrate on October 1, 2013. Appellee, as well as Pepper, Michael, and the cemetery manager, Jason Bonomo, testified at the hearing. At the conclusion of the hearing, the magistrate found that appellee, as Swing, Jr.'s sole heir at law, was entitled to the cremains in 2007. Thus, the magistrate determined that the application should be granted.

{¶ 8} Appellants filed objections to the magistrate's decision on October 18, 2013. However, the probate court overruled appellants' objections and adopted the magistrate's decision. Appellants then moved the court for a new trial, arguing that the magistrate

3.

failed to properly apply this court's decision in *In re Disinterment of Frobose*, 163 Ohio App.3d 739, 2005-Ohio-5025, 840 N.E.2d 249 (6th Dist.). On January 31, 2014, the probate court denied appellants' motion for a new trial, stating: "Without specifically mentioning *Frobose*, 2005-Ohio-5025, the magistrate's decision addressed the factors to allow disinterment in this case."

## B. Assignments of Error

{¶ 9} On February 28, 2014, appellants' filed their notice of appeal, assigning the following errors for our review:

ASSIGNMENT OF ERROR NO. 1: The Lucas County Probate Court below committed reversible error as a matter of law in failing to follow the equitable disinterment principles enunciated by the Sixth District Court of Appeals in *In re Frobose*, 163 Ohio App.3d 739, 2005-Ohio-5025, 840 N.E.2d 249 (6th Dist.).

ASSIGNMENT OF ERROR NO. 2: The Lucas County Probate Court below committed reversible error as a matter of law in ignoring the legal rights of the Appellants to possess John Swing, Jr.'s remains, to which they were and are now entitled, under the 2006 Ohio "Right to Disposition" statute, R.C. 2108.81.

{¶ 10} Because these assignments of error are interrelated, we will address them simultaneously.

4.

## II. Analysis

### A. Abuse of discretion is the appropriate standard of review.

{¶ 11} Before delving into the merits of the parties' arguments, we must resolve their disagreement concerning the appropriate standard of review to be applied in this case. Appellants contend that this case turns entirely on a question of law. Thus, appellant asserts, we should apply a de novo standard of review. Appellee, for his part, argues that the appropriate standard of review is abuse of discretion, since we are reviewing the probate court's grant of an application for disinterment.

{¶ 12} This issue has already been addressed in *Frobose*, *supra*. In *Frobose*, we stated that "[a] probate court's decision regarding the request for disinterment may not be reversed absent an abuse of discretion." *Frobose* at ¶ 17, citing *In re Disinterment of Ervin*, 4th Dist. Scioto No. 96 CA 2466, 1997 WL 156625 (Mar. 31, 1997). Moreover, we note that R.C. 517.24(3)(a) speaks to the probate court's discretion in deciding whether to grant an applicant's request for disinterment, stating, "the court, *in its discretion*, may issue an order for disinterment of the decedent's remains if good cause for disinterment is shown." (Emphasis added). Thus, we reiterate our statement in *Frobose* and conclude that the appropriate standard of review for appeals challenging a probate court's decision on an application for disinterment is abuse of discretion. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When

5.

applying this standard, a reviewing court may not merely substitute its judgment for that of the trial court. *Frobose* at ¶ 17, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

## B. The probate court did not abuse its discretion in granting appellee's application for disinterment.

{¶ 13} In their first assignment of error, appellants contend that the probate court failed to apply the equitable factor-based test that we adopted in *Frobose* to govern disinterment requests. Further, in their second assignment of error, appellants argue that the probate court erroneously failed to apply R.C. 2108.81 in this case.

{¶ 14} We begin by examining appellants' argument that the probate court failed to evaluate each factor outlined in *Frobose* prior to arriving at its decision granting appellee's application for disinterment.

{¶ 15} The governing statute in this case, R.C. 517.24(B)(1), provides, in relevant part:

> Any person who is eighteen years of age or older and of sound mind, including, but not limited to, the person who assumed financial responsibility for the funeral and burial expenses of the decedent, and who wishes to obtain a court order for the disinterment of the remains of the decedent may file an application in the probate court of the county in which the decedent is buried requesting the court to issue an order for the disinterment of the remains of the decedent.

6.

{¶ 16} In determining a request for disinterment, we apply an equity standard, which involves the consideration and weighing of several factors. *Frobose,* 163 Ohio App.3d 739, 2005-Ohio-5025, 840 N.E.2d 249 at ¶ 16, citing *Spanich v. Reichelderfer*, 90 Ohio App.3d 148, 152, 628 N.E.2d 102 (2d Dist.1993). In *Frobose*, we set forth the following non-exhaustive list of factors to be considered:

> (1) the degree of relationship that the party seeking reinterment bears to the decedent, (2) the degree of relationship that the party seeking to prevent reinterment bears to the decedent, (3) the desire of the decedent, (4) the conduct of the person seeking reinterment, especially as it may relate to the circumstances of the original interment, (5) the conduct of the person seeking to prevent reinterment, (6) the length of time that has elapsed since the original interment, and (7) the strength of the reasons offered both in favor of and in opposition to reinterment. *Id*. at ¶ 16, citing *Spanich* at 152–155.[1]

{¶ 17} Appellants state that they "asked the court below several times to apply the *Frobose* factors, but the [court] never considered them factor by factor." Appellee, for his part, argues that the probate court properly applied the factors in rendering its decision, albeit without explicitly identifying the facts that were relevant to each

---

[1] These factors were first enunciated in *Novelli v. Carroll*, 278 Pa.Super. 141, 420 A.2d 469 (1980), a case involving a surviving spouse's request to remove her deceased husband from one burial plot in order to reinter him at another cemetery. While this case involves the disinterment of cremains rather than their "reinterment" as that term is used in the list of factors, the distinction does not impact our analysis of this case or the usefulness of the factors to actions involving disinterment.

7.

individual factor.  Upon careful examination of the probate court's decision, along with the magistrate's decision upon which the court's decision was based, we cannot say that the court abused its discretion in granting appellee's disinterment application.

{¶ 18} As to the first factor, the applicant's relationship to the decedent, we note that appellee is Swing, Jr.'s sole child.  This fact was not lost on the probate court. Indeed, the magistrate's decision indicates: "John Swing, Jr. died leaving a sole heir and next of kin for inheritance purposes: his son, John Swing, III."  The decision makes several mentions of the fact that appellee is Swing, Jr.'s only son and concludes that, as such, appellants "should not have withheld the ashes deliberately from [appellee] though he asked for them more than once, and at different times or circumstances."  The probate court's decision echoes this sentiment, stating that appellee, "the sole heir, asked for his father's ashes on more than one occasion, and was denied them, even at his grandmother's funeral."  In light of the numerous references to appellee as "the sole heir" and Swing, Jr.'s only son, we find that the probate court properly considered the first factor.

{¶ 19} Next, we turn to the second factor, the objecting party's relationship to the decedent.  Once again, the magistrate's decision accurately sets forth Swing, Jr.'s relationship to each of the appellants.  However, the probate court chose to place more weight on appellee's relationship to Swing Jr.  This decision is supported by the record at least insofar as Michael is concerned, because testimony elicited at the hearing reveals

8.

that Michael had very little, if any, contact with Swing, Jr. for the five years preceding Swing, Jr.'s death. In any event, it is clear that the second factor was considered by the probate court.

{¶ 20} Concerning the third factor, the desire of the decedent, the probate court adopted the magistrate's finding that "there was *no* credible basis for [Michael's] assertion that his brother had told him what he wanted done with his ashes." (Emphasis sic.) Further, the magistrate's decision states: "The only 'ascertainable desire' logically is that John Swing, Jr. would have wanted to leave his ashes to his only son, [appellee], whom he loved." Thus, we find that the probate court considered the evidence that was presented relevant to the third factor.

{¶ 21} The fourth factor, the applicant's conduct, was also considered by the probate court. In its decision, the probate court pointed out the fact that appellee asked appellants for his father's cremains on numerous occasions, but his requests were denied. Moreover, appellee was never told where Swing, Jr.'s cremains were placed after Jean's funeral. Instead, he learned that the cremains were buried inside Jean's casket via a Facebook conversation with Mallory. Upon learning of the whereabouts of his father's cremains, appellee relayed the information to Pepper. In light of the foregoing, we conclude the court properly considered the fourth factor.

{¶ 22} Likewise, the probate court considered the fifth factor, the conduct of the persons seeking to prevent disinterment. Relevant to this factor, the court found that Jean wrongfully possessed Swing, Jr.'s cremains and refused to give them to appellee upon

request, despite his status as Swing, Jr.'s sole heir. Further, the court considered evidence presented at the hearing that Michael ordered Swing, Jr.'s cremains placed in Jean's casket in violation of cemetery policy concerning double burials. Michael at first attempted to deny any involvement in placing the cremains inside the casket, but later admitted that he asked funeral home officials to do so. In light of this evidence, it is clear that the court considered the fifth factor in arriving at its decision.

{¶ 23} Under the sixth factor, the probate court is directed to consider the length of time that has elapsed since the original interment. Here, several years had elapsed from the time Swing, Jr.'s cremains were placed in Jean's casket and buried until Pepper filed the application for disinterment. Appellants contend that Pepper, as applicant for appellee, "slept on her rights" by waiting so long to file the application. However, the probate court considered this argument, ultimately concluding that information concerning the location of Swing, Jr.'s cremains was withheld from appellee until "several years" after Jean's burial. Notably, this action was filed three years after Jean's burial. Thus, any passage of time between the internment of Swing, Jr.'s cremains and the filing of this action is attributable to appellants' failure to inform appellee of their actions regarding his father's cremains. We find that the probate court considered the sixth factor.

{¶ 24} Finally, the seventh factor focuses on the reasons offered both in favor of and in opposition to disinterment. At the hearing, Michael indicated that he objected to the disinterment because "it's not what [Swing, Jr.] wanted, or my mother, Jean Swing,

10.

wanted." However, it became clear as Michael's testimony continued that he had not spoken to Swing, Jr. for five years, thus calling into question his ability to know what Swing, Jr. wanted. Michael also objected to the disinterment on the basis that the "ashes are already buried. It's ridiculous."[2] As to appellee's reasons, the probate court was sensitive to the fact that appellee appeared to want to "recover all that he has left of his dad: his ashes." Clearly, the probate court considered the evidence bearing upon the seventh factor.

{¶ 25} In light of the foregoing, we find that the probate court properly considered the evidence as it related to each of the seven factors set forth in *Frobose*. Having considered the factors ourselves, we cannot say that the probate court's decision to grant appellee's application was unreasonable, arbitrary, or unconscionable. Accordingly, appellants' first assignment of error is not well-taken.

{¶ 26} Next, we turn to appellants' argument concerning the applicability of R.C. 2108.81. R.C. 2108.81 lists those individuals entitled to dispose of a decedent's remains following death where the decedent has not himself assigned the right of disposition to someone prior to death using a written declaration under R.C. 2108.70 to 2108.73. R.C. 2108.81(B) assigns the right of disposition in order of priority, as follows:

---

[2] Throughout their appellate brief, appellants argue that the application should be denied because appellee has no right to disinter Jean's remains in an effort to secure Swing, Jr.'s cremains. We are unpersuaded that the probate court's decision should be reversed on this basis, however, because disinterment of Swing, Jr.'s cremains would not require raising Jean's casket if Michael would not have insisted that the two be buried together in the first place.

11.

(B) Subject to division (A) of this section and sections 2108.75 and 2108.79 of the Revised Code, the right of disposition is assigned to the following persons, if mentally competent adults who can be located with reasonable effort, in the order of priority stated:

(1) The deceased person's surviving spouse;

(2) The sole surviving child of the deceased person or, if there is more than one surviving child, all of the surviving children, collectively;

(3) The deceased person's surviving parent or parents;

* * *.

{¶ 27} "The 'right of disposition' refers to the right to direct the disposition of a deceased person's body, to make and purchase funeral arrangements, and to make arrangements for burial, cremation, or other manner of final disposition of the body." *Federman v. Christ Hosp.*, 1st Dist. Hamilton No. C-120484, 2013-Ohio-5507, ¶ 2, citing R.C. 2108.70(A)(4).

{¶ 28} Here, appellants argue that, under R.C. 2108.81, Swing, Sr. and Jean, as Swing, Jr.'s surviving parents, were vested with a right of disposition over Swing, Jr.'s cremains. They note that although appellee is Swing, Jr.'s sole surviving child, he is not entitled to the right of disposition because he is not a "mentally competent *adult*." Moreover, appellants contend that the right of disposition encompasses the decision to place Swing, Jr.'s cremains inside Jean's casket prior to burial, a decision that cannot now be undone through a request for disinterment under R.C. 517.23.

12.

{¶ 29} Appellee, for his part, acknowledges that Jean and Swing, Sr. were entitled to dispose of Swing, Jr.'s body after his death under R.C. 2108.81. However, appellee argues that R.C. 2108.81 is inapplicable to this proceeding because the right was exercised when Jean and Swing, Sr. decided to cremate Swing, Jr. Appellee contends that the right of disposition was extinguished at that moment, and suggests that any other interpretation of the statute would involve expanding the right of disposition into a right of perpetual *redisposition*. Further, appellee asserts that disinterment would not encroach upon the surviving parents' right of disposition, because it was Michael who placed the cremains into the casket, not Jean or Swing, Sr.

{¶ 30} Whether a person's right of disposition under R.C. 2108.81 precludes a probate court from granting a third party's application for disinterment under R.C. 517.23 appears to be a matter of first impression in Ohio. However, our decision in *Frobose* is helpful in resolving this question. In *Frobose*, a case that predates the enactment of R.C. 2108.81, we concluded that a surviving spouse's right of disposition with regard to burial of her husband did not automatically entitle her to have her husband's remains disinterred. Specifically, we stated that a surviving spouse's right of disposition, for purposes of burial, "is not absolute, but is subject to judicial control." *Frobose*, 163 Ohio App.3d 739, 2005-Ohio-5025, 840 N.E.2d 249 at ¶ 15. We went on to examine the merits of the surviving spouse's request for disinterment through the use of several equitable factors. Ultimately, we found that the probate court did not abuse its discretion when it denied the surviving spouse's application for disinterment. *Id.* at ¶ 26.

13.

{¶ 31} In light of our statements in *Frobose*, we conclude that the right of disposition under R.C. 2108.81 does not preclude a probate court from granting an application for disinterment where the equities weigh in favor of doing so. While we recognize that our decision in *Frobose* did not involve an examination of a right of disposition under R.C. 2108.81 (which had not yet been enacted), we are not persuaded that R.C. 2108.81 nullifies the equitable standard embodied in the decision. Accordingly, appellants' second assignment of error is not well-taken.

### III.  Conclusion

{¶ 32} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.    _____
                JUDGE
Arlene Singer, J.    

Stephen A. Yarbrough, P.J.  _____
CONCUR.          JUDGE

             _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.